AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
DAVID I. WASSERMAN (Bar No. 275987)
(E-Mail: David_Wasserman@fd.org)
Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
321 E 2nd Street
Los Angeles, California 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK DOMINGO,<br><br>Defendant. | Case No. CR 19-313-SVW<br><br>**NOTICE OF MOTION AND MOTION TO LIMIT TESTIMONY OF GOVERNMENT'S TERRORISM EXPERT; MEMORANDUM OF POINTS AND AUTHORITIES, [PROPOSED] ORDER**<br><br>[Proposed] Hearing Date: July 13, 2020<br>[Proposed] Hearing Time: 11:00 a.m. |

PLEASE TAKE NOTICE THAT defendant, Mark Domingo, by and through his counsel of record, Deputy Federal Public Defenders David I. Wasserman and Angela C. C. Viramontes, moves this Honorable Court for an order limiting the testimony of the government's terrorism expert by requiring, as a foundation for admission of testimony regarding the content of Mr. Domingo's electronic devices which includes histories, political opinions, and/or political figures, that the government first establish that facts being recounted were known to and endorsed by Mr. Domingo. The defense

1 also moves the Court to order that the government's expert may not testify about other
2 terrorist attacks that Mr. Domingo is not charged with - the Boston Marathon Bombing
3 and the March 2019 terrorist attack in the Netherlands by Gökmen Tanis. This motion
4 is based on Rules 401 and 403 of the Federal Rules of Evidence.

5     This motion is based on the attached memorandum of points and authorities, any
6 declarations of counsel and any exhibits attached hereto, all files and records in this
7 case, and such further information as may be provided to the Court with respect to this
8 motion.

                                  Respectfully submitted,

                                  AMY M. KARLIN
                                Interim Federal Public Defender

DATED: June 1, 2020         By  */s/ Angela C. C. Viramontes*
                                ANGELA C. C. VIRAMONTES
                                DAVID I. WASSERMAN
                                Deputy Federal Public Defenders
                                Attorneys for MARK DOMINGO

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The government estimates that its case will last two weeks. By requiring the government to distill its expert's testimony, the Court will ensure that time is not needlessly wasted with testimony about conduct with which Mr. Domingo is not charged and with political events, figures, and opinions that Mr. Domingo was not aware of and, accordingly, could not endorse. Thus, to ensure the testimony is relevant, the defense requests that the Court limit the testimony of the government's terrorism expert by requiring the government to first establish, as a foundational matter, that the facts being recounted were known to and endorsed by Mr. Domingo. The defense also moves the Court to order that the government's expert may not testify about other terrorist attacks that Mr. Domingo is not charged with - the Boston Marathon Bombing and the March 2019 terrorist attack in the Netherlands by Gökmen Tanis - because the testimony is not relevant and is highly prejudicial, confusing as to the issues in this case, and will waste time.

## II.  ARGUMENT

**A.  The Court should not allow the government's expert to impute support for terrorists, historical events, or political opinions to Mr. Domingo without first establishing that Mr. Domino was aware of the information and actually endorsed it.**

It is important that Mr. Domingo is judged on his own actions and character, and not on the actions and character of others who are not charged in this case. Based on the government's expert disclosure, it seems the government intends to use its terrorism expert to establish context for Mr. Domingo's motive to commit the offense. That is, the government intends to elicit detailed descriptions about many terrorist leaders, strategies, tactics, histories, and propaganda without any showing that Mr. Domingo endorsed or even knew about the matters being described.

For example, the government expects that its expert "will testify about the Islamic State of Iraq and the Levant ("ISIL"), also known as the Islamic State of Iraq and Syria, al-Qa'ida in Iraq, Daesh, the 'Islamic State' and other aliases." *Ex*. A, Expert Disclosure at 1-2. The government also expects its expert to testify to the expansive topic of "the history and evolution of ISIL, the global jihadist movement, and al-Qa'ida" as well as "the territorial expansion of ISIL, its announcement of a caliphate, its presence in Syria, Iraq, the Sinai in Egypt, and other locations, and its use of various tactics to take and maintain control of territory, and access routes into ISIL-controlled territory." Because this information is woven into the expert's narrative, this testimony leaves the groundless impression that Mr. Domingo personally endorsed and supported ISIL, global jihadi movements, and al-Qa'ida as well as knew their long and complicated histories and activities,.

The government also expects that its expert will discuss prominent ISIL figures such as Abu Bakr al-Baghdadi, and making a personal oath of allegiance, or swearing ba'yah, to Abu Bakr al-Baghdadi. *Ex*. A at 2. The government's expert will also "testify about ISIL's goals and ideology, the fundamentalist version of Islam espoused by ISIL, the influence of Salafi thought, and the role of Sharia law." *Id*. The expert will discuss "ISIL's use of violence (such as rape, throwing people from buildings, beheadings, burning people alive, etc.) and its promotion of the use of violence by its supporters in Europe and the United States, against individuals or whole communities based on lack of conformance with ISIL's ideology." *Id*. The expert "is expected to discuss how ISIL disseminates information, and the communication methods used by its supporters." *Id*. The expert "is also expected to discuss Ayman al-Zawahiri, the leader of Al-Qa'ida." *Id*. This testimony also leaves the groundless impression that Mr. Domingo personally endorsed and supported ISIL's goals, ideologies, violent actions in the U.S. and abroad, as well as the former leader of Al-Qa'ida, because this information is woven into the expert's narrative.

4

The government's expert will also testify about the Tsarnaev brothers and their role in the April 15, 2013 Boston Marathon bombing, as well as the mass shooting committed by Gökmen Tanis in the Netherlands in March 2019. *Ex*. A. at 2. Again, this testimony leaves the groundless impression that Mr. Domingo personally endorsed and supported the Tsarnaev brothers and Gökmen Tanis, because this information is woven into the expert's narrative.

The First Circuit in *United States v. Mehanna*, 735 F.3d 32 (1st Cir. 2013) addressed the admissibility of such inflammatory background information under Fed. R. Evid. 401 and 403, and provides a framework for applying the Rules in this case. Mr. Mehanna was also charged with providing material support to terrorists, like Mr. Domingo. In *Mehanna*, the government introduced a large volume of what the First Circuit characterized as "emotionally charged evidence" including a video where the leader of Al-Qa'ida "extolled the decapitation" of an American "while images of deceased American soldiers were displayed on screen . . . Al-Qa'ida State of the Ummah; statements of Osama bin Laden and Ayman al-Zawahiri in book and interview form; and dozens of images portraying gripping scenes, such as the World Trade Center engulfed in flames." 735 F.3d at 40, 60.

The First Circuit dismissed, what will likely be the government's argument here, that all of this evidence should be admitted:

> The first reason (stressed by the government at oral argument) is breathtaking in its scope: the government labeled the defendant's crimes "ideological" and argued that, as a result, his speech and beliefs, as well as the writings and videos he consumed were integral to the charged crimes. We do not accept this sweeping proposition.
>
> Courts must be wary of the particular perils associated with prosecutions centered on ideology (which include, to use the government's phrase, prosecutions centered on "propaganda"). An objective observer might well regard the sprawling taxonomy suggested by the government as a thinly disguised effort to saddle defendants indiscriminately with the criminal and cultural baggage of intentionally notorious terrorists. The government's embrace of such a theory smacks of overreaching, and we give that theory no weight.

5

735 F.3d at 60.

What the First Circuit did find had probative value was content that Mr. Mehanna had actually *absorbed* and *endorsed* that went to his motive and intent. The First Circuit wrote:

> Specifically, the government posits that the defendant, inspired by terrorist rants, developed an anti-American animus, which culminated in his decision to travel to Yemen to join in Al-Qa'ida's struggle. The pictures, videos, and literature that he absorbed and endorsed during that evolutionary process, as well as the materials that he used to recruit others to follow a similar path, doubtless bear on his motive and intent.

735 F.3d at 60. Thus, the Court should not allow the government's expert to provide a lengthy lecture on histories, ideologies, and figures, including the Tsarnaev brothers and Gökmen Tanis, which Mr. Domingo did not absorb and endorse because such testimony is not probative of Mr. Domingo's motive or intent.

Furthermore, the central issue in *Mehanna* was whether the defendant's motive in traveling to Yemen and in supporting various extremist endeavors was innocent or criminal. Because *Mehanna* had not actually committed any terrorist act, the government's proof of criminal motive was necessarily circumstantial, and relied heavily on showing that he "absorbed," "endorsed," and "used" the very extremist materials to which he later objected at trial. "[T]he evidence of which the defendant complains," the First Circuit observed, "was . . . central to the government's narrative: the government's case depended on proving that the defendant's actions emanated from views that, over time, had aligned with al-Qa'ida's." *Id*. at 62. Under these circumstances, the probative value of the evidence was held sufficient to overcome its undeniably prejudicial impact. But in Mr. Domingo's case, motive is not an element of any of the crimes charged in the indictment nor is it essential in proving the government's case.

Moreover, the government does not need to admit masses of materials through its expert that Mr. Domingo neither "absorbed" or "endorsed," nor "used," much less the life stories and violent activities of numerous extremist figures whose names appear in,

6

or can be linked to, materials found on Mr. Domingo's electronic devices, such as the Tsarnaev brothers and Gökmen Tanis. The unfair prejudice, as well as the great deal of time that this all-in approach will occupy, substantially outweighs the minimal probative value of the government's expert's explanations regarding the contents of Mr. Domingo's electronic devices.

### III. CONCLUSION

For the reasons stated above, Mr. Domingo requests that the Court limit the testimony of the government's terrorism expert by requiring the government to first establish that facts being recounted by the expert were known to and endorsed by Mr. Domingo. The defense also moves the Court to order that the government's expert may not testify about other terrorist attacks that Mr. Domingo is not charged with - the Boston Marathon Bombing and the March 2019 terrorist attack in the Netherlands by Gökmen Tanis.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED: June 1, 2020          By  */s/ Angela C. C. Viramontes*
ANGELA C. C. VIRAMONTES
DAVID I. WASSERMAN
Deputy Federal Public Defenders
Attorneys for MARK DOMINGO