NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0552/4491
     Facsimile: (213) 894-2979
     E-mail:    reema.el-amamy@usdoj.gov
                david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,   | No. CR 19-313-SVW |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE VIOLENT MATERIALS |
| MARK STEVEN DOMINGO, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Opposition to Defendant's Motion to Exclude Violent Materials (the "Opposition").

//

//

//

This Opposition is based on the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and any further evidence or argument the Court may allow.

Dated: June 15, 2020                    Respectfully submitted,

                                        NICOLA T. HANNA
                                        United States Attorney

                                        CHRISTOPHER D. GRIGG
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                              /s/
                                        REEMA M. EL-AMAMY
                                        DAVID T. RYAN
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................i

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.  INTRODUCTION......................................................1

II. ISIS Propaganda Videos, Songs, and Images Glorifying and
    Calling On Supporters To Engage In Attacks........................2

    A.  Category One: ISIS Propaganda Videos Defendant
        Consumed and Shared Before and While Planning His
        Attack........................................................3

        1.  ISIS Video Calling on Americans to Commit Attacks....3

        2.  ISIS Video Defendant Promoted Online in June 2017....4

        3.  ISIS Video Defendant Promoted Online in April
            2019.................................................4

    B.  Category Two: ISIS Songs and Pictures Defendant
        Consumed and Promoted Before and While Planning His
        Attack........................................................5

        1.  ISIS Song Defendant Played and Sang for the CHS......5

        2.  ISIS Song Defendant Sent to the OCE..................6

        3.  ISIS Song Defendant Sent to the CHS..................6

        4.  ISIS Pictures Defendant Consumed and Posted
            Online...............................................7

III. ARGUMENT.........................................................8

    A.  Defendant's Consumption and Promotion of Violent ISIS
        Propaganda Is Necessary to Prove Defendant's Intent.......8

    B.  The Danger of Unfair Prejudice Does Not Substantially
        Outweigh the Probative Value of the Evidence.............11

    C.  Defendant's Consumption and Promotion of Violent ISIS
        Propaganda Is Admissible to Rebut an Entrapment
        Defense..................................................14

IV. CONCLUSION......................................................15

**TABLE OF AUTHORITIES**

**Cases**

Old Chief v. United States,
 519 U.S. 172 (1997) ........................................ 12, 13
United States v. Bailey,
 696 F.3d 794 (9th Cir. 2012) .................................... 14
United States v. Brady,
 579 F.2d 1121 (9th Cir. 1978) ................................... 12
United States v. Curtin,
 489 F.3d 935 (9th Cir. 2007) .................................... 10
United States v. El-Mezain,
 664 F.3d 467 (5th Cir. 2011) ..................................... 9
United States v. Hammoud,
 381 F.3d 316 (4th Cir. 2004) ..................................... 9
United States v. Jayyousi,
 657 F.3d 1085 (11th Cir. 2011) .................................. 11
United States v. Mehanna,
 735 F.3d 32 (1st Cir. 2013) ..................................... 11
United States v. Mende,
 43 F.3d 1298 (9th Cir. 1995) .................................... 11
United States v. Merino-Balderrama,
 146 F.3d 758 (9th Cir. 1998) .................................... 13
United States v. Salameh,
 152 F.3d 88 (2d Cir. 1998) ...................................... 12
United States v. Velazquez,
 246 F.3d 204 (2d Cir. 2001) ..................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The government intends to introduce a limited number of ISIS propaganda videos, songs, and images seized from defendant Mark Steven Domingo's ("defendant") digital devices.  This evidence – which defendant collected, consumed and disseminated to others – is necessary to prove that defendant acted with knowledge and without mistake in providing material support to carry out a mass-causality attack and that he attempted to use a Weapon of Mass Destruction against a peaceful assembly of individuals exercising their First Amendment rights in Long Beach, California.

While the media collection defendant curated through hours of online research is certainly repulsive, defendant cannot sanitize his abhorrent conduct by excluding the materials he consumed that glorify the acts of violence he planned to carry out.  Contrary to defendant's instant motion to exclude, such evidence is both highly relevant and not unduly prejudicial.  Evidence that he consumed and promoted ISIS videos, songs, and images glorifying violence and calling on Muslims to wage violent Jihad is directly and highly probative of his intent to engage in such violence himself.

Moreover, the government intends to introduce a very limited number of exhibits culled from defendant's vast collection of ISIS propaganda.  The government has intentionally avoided the most gratuitous and grotesque materials, and will redact particularly objectionable portions of the selected exhibits.  Presentation of these exhibits, along with a limiting instruction, will permit the government to present highly relevant evidence on the core disputed issue at trial while mitigating the risk of unfair prejudice.

Lastly, if defendant is permitted to present an entrapment defense, which the government has opposed, his consumption and promotion for more than a year of ISIS propaganda videos, songs, and images glorifying and calling on supporters to engage in attacks is probative of his predisposition to commit the charged crimes.

**II.   ISIS Propaganda Videos, Songs, and Images Glorifying and Calling On Supporters To Engage In Attacks**

For more than a year before he met the CHS, defendant consumed and promoted ISIS propaganda videos, pictures, and songs to friends and associates, along with statements expressing his desire to commit violent Jihad in the United States.  In March and April 2019, while defendant planned his terrorist attack, he continued to promote similar content to associates and the CHS.  After defendant's arrest, the government executed search warrants on his cell phone, computers, and email accounts, and recovered hundreds of these videos, pictures, and songs.  At trial, the government intends to introduce a small number of selected representative examples of these materials.

Notwithstanding his intent to present an entrapment defense, defendant has moved to exclude videos, songs, and images seized from his cell phone and computers that demonstrate his predisposition, motive, and intent to commit such an attack.  Specifically, defendant seeks to exclude (1) ISIS propaganda videos that he consumed and promoted online; (2) ISIS nasheeds (songs) and images that he consumed and promoted online; and (3) videos unrelated to ISIS and terrorist organizations.

The government intends to introduce a limited number of exhibits from the first two categories, specifically selected and redacted to avoid gratuitous and grotesque imagery.  The six videos and songs

2

identified below contain just over one hour of total content, a very small percentage of the total trial that is anticipated to last up to two weeks and involve over a dozen witnesses. The government does not intend to introduce any videos from the third category in its case-in-chief.

**A.  Category One: ISIS Propaganda Videos Defendant Consumed and Shared Before and While Planning His Attack**

   1.  <u>ISIS Video Calling on Americans to Commit Attacks</u>

The government intends to introduce a redacted version of an ISIS recruitment video seized from defendant's computer titled "Islamic State: Answer the Call." The video, attached as Exhibit 1, is only two-and-a-half minutes in length, and aims to recruit followers from western countries, like defendant, to engage in violent Jihad. The video shows clips of ISIS fighters along with a song, in English, with the words:

> Go and answer the call. Don't spare none, kill them all. It is now time to rise. Slit their throats, watch them die. Holding up the flag high and seeking paradise, o my brothers stay strong victory won't be long. Together we will stand up, once filled with iman, men who answered the call terrorizing the world. Through our blood comes success and we'll give it our best. To destroy the kuffar[1], we will slaughter them all. So my brothers erupt. Let the world know we're up. By the will of Allah we will conquer the world.

Defendant parroted the song's language in conversations with his online associates and the CHS, referring to his desire to "slaughter

---

[1] "Kuffar," also spelled as "Kaffir," is an Arabic term for "infidels," or those who do not believe in Islam. Defendant frequently used this term to refer to his intent to commit violent Jihad. For example, on April 12, 2019, he wrote to the OCE, "I want to slaughter kaffirs." On April 21, 2019, he wrote online to justify killing civilians, stating, "kaffir blood is kaffir blood."

3

kuffar," to "stand up" for the Muslim community, and go on a "conquest" to spread Islam.

2. ISIS Video Defendant Promoted Online in June 2017

Between May 2017 and March 2019, defendant exchanged numerous private Facebook messages with an associate, J.B., regarding his support for ISIS, hatred of Jews, and desire to commit mass-casualty attacks. On June 4, 2017, J.B. sent defendant an article about French forces who killed an ISIS fighter as he attempted to detonate a car bomb, and defendant replied, "sucks that man didn't reach his target . . . I watch isis videos . . . they do these interviews with those drivers . . . like last words n shit." Defendant then sent J.B. two ISIS propaganda videos. The government intends to introduce one of those videos, titled, "Islamic State – We Will Surely Guide Them To Us." That video repeatedly shows ISIS fighters making and then detonating Improvised Explosive Devices ("IEDs") like the ones defendant intended to use in this case. The video is attached as Exhibit 2.[2]

3. ISIS Video Defendant Promoted Online in April 2019

Beginning in at least January 2019, defendant also participated in several invite-only online chatrooms for supporters of ISIS and other violent Jihadi groups. In those chatrooms, defendant shared ISIS propaganda videos and expressed his support for ISIS and his desire to commit violent attacks. For example, on April 1, 2019 (as he was planning the attack in this case) defendant posted a message,

---

[2] To avoid the display of gratuitous violence, the government will redact the faces of those depicted being killed by ISIS fighters in this video. If the Court concludes that Rule 403 requires additional portions of the video to be redacted prior to admission, the government will make those additional redactions.

4

"New video message from The Islamic State: 'Separation of the Heads.'"  Another member of the group who appears to be a Jihadi fighter in the Philippines responded with a quote regarding the need to spread Islam and stated "there is no room for weaknesses or inactivity or sitting back with those who remain behind."  Defendant replied, "you're an inspiration to me.  Do Philippine police . . . patrol your area."  The fighter replied that Philippine police had left the area "because [they] will get IED striked or gun/machete attacked."  Defendant replied, "interesting . . . an ied here . . . would do so much damage."  The government intends to introduce at trial a redacted version of the video defendant posted on April 1, 2019, which is attached as Exhibit 3.

**B.   Category Two: ISIS Songs and Pictures Defendant Consumed and Promoted Before and While Planning His Attack**

      1.   <u>ISIS Song Defendant Played and Sang for the CHS</u>

On March 18, 2019, during his first meeting with the CHS, defendant played the CHS an ISIS propaganda nasheed, or song, to which defendant had memorized the words.  On April 26, 2019, defendant played the song again while driving the CHS and UC to Long Beach to finalize plans for the attack.  At that time, defendant said he had made a "playlist" for their drive, filled with songs touting ISIS and exhorting its followers to commit violent attacks.

The song, which is attached as Exhibit 4, is called "Islam-Dawlatna Mansura," which is Arabic for "Our State Is Victorious."  A draft Arabic-to-English translation is attached as Exhibit 4A.  The song begins, "My greetings to the Islamic State.  It is unsheathed like a sword.  You are the blessing of Allah.  Our State is victorious."  A later verse sings, "The blood of ruthless white non-

5

believers and Shiites has been shed.  And many of the rejectionists have been slaughtered.  And our State is victorious.  And if you say Fallujah, it is unleashed for war.  And America is in a tough situation.  And our State is victorious.  In Zoba and Bu-Ghraib, we trampled over the Hummers and the Jeeps.  And turned America's hair gray.  And our State is victorious."  A later verse sings, "And in Mosul, terrorism is increasing, oh friends.  Protect it, oh All-Giving Allah."  The final verse signs, "Explosives are detonating on the army and the military, and our State is victorious."

### 2. ISIS Song Defendant Sent to the OCE

On March 20, 2019, defendant sent the OCE a link to a popular ISIS propaganda nasheed, or song, called "Ya Fawza, What a Victory," and wrote, "this nasheed tho," with images of a hand holding up one finger, a face crying, and a black flag.  The song is attached as Exhibit 5.  The lyrics state, among other things, "Victorious are those who truly achieve martyrdom.  There are promises for those who achieve martyrdom."  The song then goes on to list various promised rewards for martyrs.  The song then continues, "And many came from different lands, leaving family and everything, and joined the call to fight the enemy."

### 3. ISIS Song Defendant Sent to the CHS

On April 1, 2019, defendant sent the CHS a link to an ISIS propaganda nasheed, or song, called "We Set Our Chest On The Day of Descent."  Defendant wrote, "this nasheed is bomb . . . it's a nasheed i[']ve been trying to find for a while."  The song is attached as Exhibit 6.  The lyrics state, among other things, "We

fought those who became kuffar and were against tawheed.[3]  We caused bloodshed and casualties.  We established our khilafah[4] on tawheed."

### 4. ISIS Pictures Defendant Consumed and Posted Online

The FBI recovered hundreds of terrorist-related pictures from defendant's laptop computers.  Defendant posted many of these pictures online to promote his violent ideology.  The pictures from the laptop are combined into summary reports.  The government intends to introduce one such report from defendant's laptop, attached as Exhibit 7.  While defendant's possession and promotion of the pictures in this report demonstrate his support for and intent to commit violent Jihad, they do not contain grotesque or gratuitous images.  Many of the pictures show ISIS fighters riding on horseback or engaged in battle and carrying the ISIS flag.  Others have written messages espousing the same violent ideology defendant promoted.  For example, one picture shows a man holding a knife and Arabic and English lettering stating, "What an excellent day for killing."  Another shows the ISIS flag painted on a building and the words, "Pray to Allah or die."  Other pictures promote hatred of Jews, which defendant repeatedly expressed to the CHS, including in their first meeting when defendant proposed attacking Jews walking to synagogue.

From defendant's cell phone, the government does not seek to introduce the gruesome and grotesque photographs identified in defendant's motion, but instead seeks to introduce a small number of photographs showing ISIS fighters, for the purpose of demonstrating defendant's support for ISIS's violent ideology.  These pictures are attached as Exhibit 8.

---

[3] "Tawheed" is Arabic for the concept of the "oneness of God."
[4] "Khilafah" is Arabic for the "Caliphate," or Islamic State.

**III. ARGUMENT**

    **A.    Defendant's Consumption and Promotion of Violent ISIS Propaganda Is Necessary to Prove Defendant's Intent**

Admission of the limited exhibits identified above is necessary to prove defendant acted with knowledge, without mistake, and with the intent to carry out a mass casualty attack. Defendant is charged with a violation of 18 U.S.C. § 2339A (Providing Material Support to Terrorists) and 18 U.S.C. § 2332a(a)(2) (Attempted Use of a Weapon of Mass Destruction). For count one, the government is required to prove that defendant provided material support or resources "knowing or intending" that they be used in furtherance of a crime of terrorism, namely 18 U.S.C. § 2332a(a)(2). For count two, the government is required to prove that defendant "attempted" to and "intended" to use a weapon of mass destruction and made a substantial step in furtherance of commission of that crime.

Admission of terrorist propaganda is the norm in terrorism prosecutions, and is regularly admitted over Rule 401 and 403 objections, especially those in which the government intervened before the defendant could carry out a mass causality attack. See United States v. Elhuzayel, No. 16-50374, No. 16-50392, 2020 U.S. App. LEXIS 8674 *2 (9th Cir. Mar. 18, 2020) (unpublished opinion) (upholding admission of terrorism images on defendants' digital devices and social media accounts admitted at trial to counter defendants' claims that a coconspirator was traveling to Syria to get married rather than to join a terrorist organization); United States v. Mohamud, 843 F.3d 420, (9th Cir. 2016) (evidence in terrorism trial included al-Qa'ida video titled "No Peace with the Jews"); United States v. Mehanna, 735 F.3d 32, 60-63 (1st Cir. 2013)

8

(upholding admission of "extensive" "terrorist-related media" including dozens of terrorism videos, some showing beheadings, and others showing the World Trade Center engulfed in flames, as relevant to prove defendant's intent and motive and rebut defendant's claim of innocent motive); United States v. El-Mezain, 664 F.3d at 467, 507-11 (5th Cir. 2011) (holding that material seized from the defendant, "including images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of [the defendant] to support Hamas"); United States v. Abu-Jihaad, 630 F.3d 102, 133-34 (2d Cir. 2010) (upholding admission of terrorist propaganda, including Osama bin Laden's 1996 fatwa against the United States, as evidence of motive and intent); United States v. Hammoud, 381 F.3d 316, 340-43 (4th Cir. 2004) (upholding admission of excerpts from terrorist propaganda videos found in the defendant's residence because they were probative of his intent, motive, knowledge, and agreement with terrorist objectives).

The evidence the government seeks to admit is highly probative of defendant's motive and intent to commit the charged crimes for several reasons. First, defendant explicitly acknowledged in conversations with associates that his viewing of ISIS propaganda videos, pictures, and songs inspired him to engage in violent Jihad. Thus, by his own admission, these items are central to proving how he developed the intent to commit the charged crimes.

Second, defendant shared these videos, pictures, and songs, as well as other far more gruesome videos, along with comments in which he expressed admiration for ISIS and support for their activities depicted in the videos. When planning the charged attack, defendant repeatedly referenced ISIS and his desire to emulate the style of

attacks committed by ISIS and depicted in the ISIS videos he shared. Defendant also told the CHS that he supported ISIS and would swear allegiance to ISIS if the group came to the United States.

Third, defendant specifically played the songs at issue for the CHS, including during his final drive with the CHS to surveil the site of the attack. Defendant also parroted the language of the videos at issue, expressing his desire to "slaughter kaffir," to die a "martyr," to "stand up" for the global Muslim community, and to "bring terror and fear to the infidel." The videos, pictures, and songs are central to understanding how defendant developed the motive and intent to commit the charged crimes, and to providing context for his statements in recorded meetings with the CHS in this case.

Moreover, the exhibits the government identified are especially probative because defendant was prevented from carrying out his attack and defendant intends to argue that he never in fact intended to carry out his plan. The Ninth Circuit has "routinely held that circumstances surrounding an alleged crime become more relevant when the defendant makes his intent a disputed issue." United States v. Curtin, 489 F.3d 935, 952 (9th Cir. 2007) (en banc). In Curtin, the defendant was charged with violating 18 U.S.C. § 2423(b)—traveling across state lines to engage in sexual acts with a minor. Id. at 937. The Ninth Circuit affirmed the admission of graphic stories of adult-minor sex from the defendant's digital device because the stories "were at the core of the only material fact the defense sought to dispute"—the defendant's mental state. Id. at 950.

Here, as in Curtin, the videos, pictures, and songs are probative of the primary material fact the defense seeks to dispute – his intent to commit the charged crimes.

10

### B. The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of the Evidence

The presentation of the small number of exhibits identified above, carefully selected and further redacted to avoid particularly graphic content, will ensure that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Rule 403 favors admissibility, as "[u]nder the terms of the rule, the danger of unfair prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (emphasis in original). Accordingly, the exclusion of relevant evidence pursuant to Rule 403 is an extraordinary remedy, to be used sparingly. Id.

Defendant cannot prevent the admission of violent terrorism propaganda he obtained and sought to emulate simply because they contain violent imagery. Here, defendant is charged with providing material support to, and attempting to commit, a horrifically violent attack. By his own recorded statements, his goal was to kill dozens of innocent people. To explain how a person could develop the intent to commit such violent acts, the government must be permitted to show the jury at least some of the violent propaganda that inspired him. As the First Circuit explained in a terrorism trial, "Rule 403 does not ensure that trials—even criminal trials—will be antiseptic affairs," and "terrorism-related evidence is often emotionally charged." Mehanna, 735 F.3d at 64-65. That "emotional overlay is directly related to the nature of the crimes" that terrorist supporters commit. Id. at 64; see United States v. Jayyousi, 657 F.3d 1085, 1107-08 (11th Cir. 2011) (upholding admission of a seven-minute portion of 1997 televised interview of Osama bin Laden where

it was played only once for the jury and the district court gave a limiting instruction).

Indeed, courts have repeatedly held that evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact. United States v. Goseyun, 789 F.2d 1386, 1387 (9th Cir. 1986) (affirming admission of photograph of victim's beaten body as to show cause of death and willful, deliberate and premeditated nature of the murder); United States v. Brady, 579 F.2d 1121, 1129 (9th Cir. 1978) (holding that graphic murder photographs are inadmissible "only when the picture is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury"); United States v. Salameh, 152 F.3d 88, 123 (2d Cir. 1998) (affirming admission of "shocking" photographs of people killed in bombing, including photograph of pregnant victim).

Defendant's offer to stipulate that "terrorist propaganda" materials were found on his computer and phone is inadequate because the content of those materials, rather than a brief and sanitized description, is necessary to prove defendant's intent. The Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), is particularly instructive on this point. In Old Chief, the Supreme Court interpreted Rule 403 in the situation where a criminal defendant offers to stipulate to an element of the crime, but the government seeks to refuse that stipulation and instead to introduce evidence relevant to that element. The Court upheld the general rule that "the prosecution is entitled to prove its case by evidence of its own choice, or more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the

case as the Government chooses to present it." Id. at 186-87 (emphasis added). Notwithstanding this rule, the Court adopted a different rule in cases where the proffered stipulation relates to the defendant's status as a felon, such as when a defendant in a felon-in-possession trial offers to stipulate to his prior felony to obviate the need to prove the details of his prior crimes. Id. at 191.

Since Old Chief, the Ninth Circuit has made clear that Old Chief's narrow exception to the general rule does not apply outside of the context of stipulations to one's felon status: "In the [non-Old Chief] situations, the opposite generalization applies: 'a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence.'" United States v. Merino-Balderrama, 146 F.3d 758, 762 n.3 (9th Cir. 1998); accord, e.g., United States v. Velazquez, 246 F.3d 204, 211 (2d Cir. 2001) (affirming admission of autopsy photographs despite defendant's offer to stipulate that an assault had occurred).

Here, defendant has not offered to stipulate to the relevant element of the offense – that he had the intent to commit the charged crimes. Accordingly, the government has a right to introduce probative evidence to prove that element. The government has identified a deliberately limited number of videos and photographs, avoiding the most grotesque and gruesome content, to avoid any substantial risk of unfair prejudice.

Defendant's reliance on United States v. Waters is also unavailing. Waters stands only for the proposition that the district court should view the materials at issue before making a Rule 403 determination. 627 F.3d 345, 356 (9th Cir. 2010). While the Ninth

Circuit expressed skepticism regarding the relevance of the defendant's reading materials in that case, particularly given the absence of evidence that defendant actually possessed the materials, it still recognized that such materials could be relevant to the question of intent. Id. at 355. Here, defendant not only possessed the materials at issue, he promoted them, played them during recorded meetings with the CHS, and expressly referenced them in explaining why he wanted to commit the charged crimes. The materials are relevant to proving the central disputed issue in the case, and should be admitted.

Lastly, any remaining risk can be addressed through a limiting instruction. Generally, limiting instructions are sufficient to cure prospective prejudicial impact. See United States v. Bailey, 696 F.3d 794, 809 (9th Cir. 2012). In this case, the government proposes the following limiting instruction:

> You are about to hear evidence that certain videos/images/songs were found on defendant's digital devices. I instruct you that this evidence is admitted for the limited purpose of state of mind, and you must determine for yourself what weight you give to it, and you must consider it only for that limited purpose.

This instruction would cure any remaining risk of unfair prejudice from the admission of the limited and redacted set of defendant's violent propaganda that the government intends to introduce.

### C. Defendant's Consumption and Promotion of Violent ISIS Propaganda Is Admissible to Rebut an Entrapment Defense

Finally, defendant's library of terrorist propaganda is also admissible to rebut defendant's noticed entrapment defense, if defendant is permitted to present that defense. (The government's opposition to defendant's noticed entrapment defense is addressed

14

separately in the Government's Motion to Preclude an Entrapment Defense, Dkt. 61). When a defendant presents an entrapment defense, the government bears the burden of proving beyond a reasonable doubt that either: (1) he was predisposed to commit the crime before being contacted by government agents; or (2) he was not induced by the government agents to commit the crime. See Ninth Circuit Model Jury Instruction No. 6.2 (entrapment).

The most important factor courts consider to determine whether a defendant was predisposed to commit an offense is whether the defendant was reluctant to commit the offense. See United States v. Busby, 780 F.2d 804, 807 (9th Cir. 1986). Here, the videos, songs, and pictures identified above – which glorify violence and call on supporters of ISIS to engage in violent Jihad – show that defendant not only lacked reluctance, he was radicalized and inspired to commit mass-casualty terrorist attacks well before he ever met a government agent. Indeed, in his conversations with the OCE, CHS, and others, defendant talked about how the ISIS videos and nasheeds (and not any government agent) inspired him to commit the attack. Accordingly, if defendant is permitted to raise an entrapment defense, the government must be permitted to rebut it with the evidence identified above.

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion to exclude violent materials.