NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0552/4491
    Facsimile: (213) 894-2979
    E-mail:   reema.el-amamy@usdoj.gov
            david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MARK STEVEN DOMINGO,<br><br>        Defendant. | No. CR 19-313-SVW<br><br>GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION TO LIMIT TESTIMONY OF THE GOVERNMENT'S TERRORISM EXPERT AND MOTION TO EXCLUDE EVIDENCE OF OTHER TERRORIST ATTACKS |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Consolidated Opposition to Defendant's Motion to Limit Testimony of the Government's Terrorism Expert and Motion to Exclude Evidence of Other Terrorist Attacks (the "Opposition").

//

This Opposition is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument the Court may allow.

Dated: June 15, 2020          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

        /s/
REEMA M. EL-AMAMY
DAVID T. RYAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

During his attack planning, defendant Mark Steven Domingo ("defendant") repeatedly spoke about the inspiration he drew from the terrorist organizations, the Islamic State of Iraq and al-Sham ("ISIS") and al-Qa'ida, his intent to emulate specific prior terrorist attacks such as the 2014 Boston Marathon bombing and the 2017 Las Vegas mass shooting, and his desire to seek vengeance for other specific attacks against Muslims such as the 2019 Christchurch, New Zealand mass shooting.  Defendant also used Arabic terms and religious concepts to explain his motive and intent to carry out his planned attack.  The government intends to call an expert witness, William Braniff, to explain these organizations, events, and concepts that defendant referenced in discussing his planned attack.

Defendant has moved to: (1) limit Mr. Braniff's testimony by requiring the government to first establish, as a foundational matter, that the facts being recounted were known to defendant, and (2) preclude Mr. Braniff from testifying about other terrorist attacks defendant discussed, including the Boston Marathon bombing.  (Dkt. 58.)  Separately, Defendant moved to preclude non-expert testimony and other evidence regarding the other terrorist attacks that defendant sought to emulate or to avenge.  (Dkt. 56.)

Defendant's first request is moot.  The government's evidence at trial will establish defendant's familiarity with the organizations, events, and concepts about which Mr. Braniff will testify.  Indeed, the purpose of Mr. Braniff's testimony is to explain and provide context for defendant's own recorded statements.

Defendant's second and third requests should be denied. Defendant repeatedly discussed his desire to avenge prior attacks against Muslims (such as the New Zealand mass shootings) and to emulate attacks against the United States (such as the Boston Bombing and the Las Vegas mass shooting). Defendant's statements about these events are highly probative of his knowledge, motive, and intent to commit the charged crimes. To the extent he is permitted to present an entrapment defense, the statements are also highly probative of his predisposition. A limited amount of expert testimony and supporting evidence – which will neither extend the trial nor include graphic or gratuitous violence – is necessary to explain defendant's statements and the events they reference.

**II. STATEMENT OF FACTS**

**A. Defendant Spoke About His Support for ISIS and Desire to Emulate or Avenge Specific Terrorist Attacks**

The government set forth a detailed statement of facts in support of its Motion in limine to Preclude an Entrapment Defense (Dkt. 61 at 2-13), and incorporates those facts by reference. As relevant here, the statement of facts set forth how, both before and during his attack planning, defendant consumed and promoted ISIS propaganda, and spoke about the inspiration he drew from ISIS, his desire to emulate tactics used by ISIS and al-Qa'ida, his desire to seek vengeance for the New Zealand mass shootings and other perceived attacks against Muslims, and his desire to emulate the Las Vegas mass shooting. The statement of facts also showed several examples of defendant's use of Arabic words and concepts when describing his motive and intent, such as "Mujahedeen," "Dawla Islamiyyah," the "deen," "kuffar," "shahid," and "Jihad."

2

  Defendant also spoke to the CHS about his desire to emulate the 2014 Boston Marathon bombing committed by Dzhokhar and Tamerlan Tsarnaev.  Specifically, on April 19, 2019, defendant met with the CHS and directed the CHS to have an associate send them instructions for making an Improvised Explosive Device ("IED").  Defendant explained, "even a small IED would do damage in a crowd. [. . .]  The human body is very easy to break.  A grenade can do a lot of damage, but a big IED just in a backpack, in a crowd?  You're looking at least 20 people dead, maybe, maybe 30 people injured, so around 50 at least."  The CHS said, "That's going to be the headline."  Defendant replied, "I think if we do the IED route we are going to storm.  Remember the Tsarnaev brothers, the Boston bombers, it stirred up a hornets nest [. . .]  If we do this, LA is going to be locked down."

  On April 23, 2019, defendant again discussed the Boston Bombing, explaining that he bought three-inch nails to use as shrapnel inside the IEDs because "you only need three inches to kill a person . . . It penetrates three inches.  That's where your liver, your stomach, your intestines, your guts. . . . so I'm banking on three inches will penetrate some people's intestines. Now . . . like I know the Tsarnaev brothers, their bomb was pretty big, uh a small but they were packed.  I assume they're gonna do this on the beach.  The beach is wide open . . . there's so much room to move."  Later in the meeting, defendant discussed how the bombs would look when they explode and how fast the nails would shoot out, saying, "I saw what happened at the Boston Marathon. . . . You'll see a bunch of bodies like drop and see dust and smoke . . . Screaming."

3

**B.   Mr. Braniff's Proposed Expert Testimony**

The government anticipates that its terrorism expert will explain and put into context defendant's statements about ISIS, al-Qa'ida, and specific terrorist attacks.  Mr. Braniff will provide context regarding the activities and ideology of ISIS and al-Qa'ida, and methods they use for disseminating propaganda, such as the propaganda defendant consumed and promoted.  Mr. Braniff will also explain the Arabic terms and concepts defendant used in this case, such as those described above, and how those terms are used by ISIS supporters, such as defendant in this case, to justify killing non-Muslim civilians.  Finally, Mr. Braniff will explain and provide context for the three specific attacks defendant said he wanted to emulate or avenge: (1) the 2014 Boston Marathon bombing; (2) the 2017 Las Vegas mass-shooting; and (3) the March 2019 New Zealand mass-shooting.

**III. ARGUMENT**

**A.   Expert Testimony Regarding Attacks Defendant Sought to Emulate or Avenge Will Help the Jury Understand Defendant's Statements**

Expert testimony regarding the specific terrorist attacks defendant sought to emulate or avenge will help the jury understand defendant's recorded statements in this case.  Defendant's statements regarding those other attacks are highly probative of his knowledge, motive, and intent to carry out the mass-causality attack he planned.  Where a defendant claims he did not form the intent necessary to commit the charged crime(s) — as defendant has signaled he will in this case — the Ninth Circuit instructs district courts to liberally admit otherwise admissible evidence that is prohibitive of that defendant's intent.  The Ninth Circuit has "routinely held that

4

circumstances surrounding an alleged crime become more relevant when the defendant makes his intent a disputed issue." United States v. Curtin, 489 F.3d 935, 952 (9th Cir. 2007) (en banc).

Contrary to defendant's motion, the government's proposed expert testimony would not include admitting "masses of material" that defendant did not "absorb," "endorse," or "use." (Mot. at 6.) Instead, the proposed expert testimony will help the jury understand defendant's statements regarding the specific terrorist attacks he said he wanted to emulate or avenge. Testimony that allows the jury to understand defendant's statements will permit the government to demonstrate his predisposition, motive, and intent to commit the charged crimes, and should be admitted for that purpose. See United States v. Hayat, 710 F.3d 875, 900-01 (9th Cir. 2013) (affirming admission of terrorism expert's testimony regarding the meaning of defendant's Arabic statements as indicating his readiness to commit "an act of warfare against a perceived enemy"); United States v. El-Mezain, 664 F.3d 467, 509 (5th Cir. 2011) (affirming admission of terrorism expert's testimony about two prior suicide bombings to "provide helpful context" for other evidence regarding defendant's actions); United States v. Batiste, No. 06-20373-CR, 2007 WL 5303052, *2 (S.D. Fl. Oct. 26, 2007) (admitting terrorism expert's testimony that defendants "shared the goals of Islamist terrorists, including terrorist attacks against prominent U.S. landmarks").

**B. The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of the Evidence**

The probative value of a limited amount of testimony and supporting evidence to explain and place into context defendant's references to specific attacks he sought to emulate or avenge will

5

not be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 favors admissibility, as "[u]nder the terms of the rule, the danger of unfair prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (emphasis in original). Accordingly, the exclusion of relevant evidence pursuant to Rule 403 is an extraordinary remedy, to be used sparingly. Id.

As the government has set forth in its concurrently-filed opposition to defendant's Motion to Exclude Statements under Rule 403, evidence is not unfairly prejudicial merely because it concerns upsetting topics. Under Rule 403, generally "[e]vidence will not be excluded as unduly prejudicial when it is not more inflammatory than the charged crime." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999). Here, defendant is charged with providing material support to, and attempting to commit, a horrifically violent attack. His recorded statements referencing the attacks that inspired and provoked him, and expert testimony explaining the meaning of those references, are not more inflammatory than the actions he took to attempt to carry out the attack. See United States v. Mostafa, 16 F. Supp. 3d 236, 257 (S.D.N.Y. 2014) ("While it is prejudicial that the defendant has stated that he supports violent jihad, this is similar to, and no more prejudicial than, the crimes with which he has been charged.")

Defendant's reliance on United States v. Al-Moayad, 545 F.3d 139, 160-163 (2d Cir. 2008) does nothing to change the analysis. In Al-Moayad, the defendants had offered to stipulate unqualifiedly to

6

their knowledge that Hamas engaged in violent terrorist activities, which would greatly obviate the need for the government to introduce evidence of a violent terrorist attack that was committed by members of a foreign terrorist organization. Id. Nevertheless, the government introduced lengthy testimony regarding the details of the attack. Id. In comparison, in this case, the government will introduce testimony describing various attacks defendant voluntarily discussed during the investigation as crimes that he wanted to emulate or avenge. Testimony regarding these other attacks will be limited, but is necessary for the jury to understand the defendant's statements. As such, Al-Moayad is distinguishable and not persuasive here.

### C. Testimony Regarding Terrorist Attacks Defendant Sought to Emulate Is Admissible to Rebut an Entrapment Defense

If defendant is permitted to present an entrapment defense, testimony regarding the other terrorist attacks defendant discussed should also be admitted to demonstrate predisposition and lack of inducement. When a defendant presents an entrapment defense, the government bears the burden of proving beyond a reasonable doubt that either: (1) he was predisposed to commit the crime before being contacted by government agents; or (2) he was not induced by the government agents to commit the crime. See Ninth Circuit Model Jury Instruction No. 6.2 (entrapment).

The most important factor courts consider to determine whether a defendant was predisposed to commit an offense is whether the defendant was reluctant to commit the offense. See United States v. Busby, 780 F.2d 804, 807 (9th Cir. 1986). Here, limited and non-cumulative testimony regarding the terrorist attacks defendant sought

7

to emulate or avenge should be admitted to show that defendant not only lacked reluctance, he was radicalized and inspired to commit mass-casualty terrorist attacks well before he ever met a government agent. Accordingly, if defendant is permitted to raise an entrapment defense, the government must be permitted to rebut it with testimony related to other terrorist attacks.

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion to exclude evidence of other terrorist attacks and also deny defendant's motion to limit testimony of the government's expert witness and deny the remainder of the motion as moot.

8