NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0552/4491
     Facsimile: (213) 894-2979
     E-mail:    reema.el-amamy@usdoj.gov
                david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 19-313-SVW |
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OTHER ACTS EVIDENCE |
| MARK STEVEN DOMINGO, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Opposition to Defendant's Motion to Exclude Other Acts Evidence (the "Opposition").

//

//

This Opposition is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument the Court may allow.

Dated: June 15, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

         /s/
REEMA M. EL-AMAMY
DAVID T. RYAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I. INTRODUCTION........................................................1

II. FACTUAL BACKGROUND.................................................2

    A. Category One: Defendant's Statements Regarding Obtaining, Maintaining, Displaying, and Modifying Firearms.......................................................2

    B. Category Two: Defendant's Statements to a Colleague Regarding His Desire to Commit Mass Casualty-Attacks......6

    C. Category Three: Defendant's Consumption of ISIS Propaganda................................................6

III. ARGUMENT..........................................................6

    A. Defendant's Statements About Firearms and Committing Mass Murder, and His Consumption of Violent ISIS Propaganda Are Probative of Knowledge, Motive, and Intent....................................................6

    B. The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of the Evidence..............9

    C. Defendant's Statements About Firearms and Committing Mass Murder, and His Consumption of Violent ISIS Propaganda Are Admissible to Rebut an Entrapment Defense..................................................10

IV. CONCLUSION.......................................................11

**TABLE OF AUTHORITIES**

**Cases**

United States v. Mostafa,
  16 F. Supp. 3d 236 (S.D.N.Y. 2014) ................................. 9
Pulido v. United States,
  425 F.2d 1391 (9th Cir. 1970) ..................................... 11
United States v. Brady,
  579 F.2d 1121 (9th Cir. 1978) ...................................... 9
United States v. Busby,
  780 F.2d 804 (9th Cir. 1986) ...................................... 11
United States v. Chant,
  Nos. CR94-1149(SBA), CR94-0185, 1997 WL 231105
  (N.D. Cal. Apr. 4, 1997) .......................................... 10
United States v. Goseyun,
  789 F.2d 1386 (9th Cir. 1986) ...................................... 9
United States v. Lillard,
  354 F.3d 850 (9th Cir. 2003) ....................................... 7
United States v. Livoti,
  196 F.3d 322 (2d Cir. 1999) ........................................ 9
United States v. Mendoza-Prado,
  314 F.3d 1099 (9th Cir. 2002) ..................................... 10
United States v. Salameh,
  152 F.3d 88 (2d Cir. 1998) ........................................ 10
United States v. Segovia,
  576 F.2d 251 (9th Cir. 1978) ...................................... 11
United States v. Vizcarra-Martinez,
  66 F.3d 1006 (9th Cir. 1995) ....................................... 7

**TABLE OF AUTHORITIES (CONTINUED)**

United States v. Williams,
  989 F.2d 1061 (9th Cir. 1993) ..................................... 7

**Statutes**

18 U.S.C. § 2332a(a)(2) ......................................... 7, 8

18 U.S.C. § 2339A ................................................. 7

**Rules**

Fed. R. Evid. 401 .............................................. 1, 8

Fed. R. Evid. 403 ......................................... 1, 8, 9, 10

Fed. R. Evid. 404(b) ...................................... 1, 6, 7, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Mark Steven Domingo ("defendant") moved under Federal Rules of Evidence 401, 403, and 404(b) to exclude four categories of evidence that demonstrate his intent to carry out the charged conduct: (1) his statements about using his firearms to commit mass murder and modification he made to the firearms for that purpose; (2) his statements to friends and colleagues about his desire to commit a mass shooting; (3) his use of the Internet to consume ISIS propaganda; and (4) his threats while in the U.S. military to commit mass murder.  The motion should be denied.

As with his other, similar motions, defendant attempts to sanitize his abhorrent acts through the artificial and illogical exclusion of probative evidence.  (See Defendant's Motion to Exclude Evidence of Other Terrorist Attacks (Dkt. 56), Motion to Exclude Prejudicial Language (Dkt. 57), Motion to Exclude Statements (Dkt. 73), Motion to Exclude Violent Materials (Dkt. 75)).  Defendant's efforts are unavailing.  First, defendant's statements and actions identified above are not "other acts" under Rule 404(b), but are directly relevant to the charged crimes and probative of his intent. Second, while his statements and actions are objectionable, they are not inadmissible simply because they paint him in a bad light. Third, if defendant presents an entrapment defense, the statements and actions are also probative of his predisposition to commit the charged crimes.

**II. FACTUAL BACKGROUND**

    **A. Category One: Defendant's Statements Regarding Obtaining, Maintaining, Displaying, and Modifying Firearms**

In March 2019, before he met the CHS, defendant wrote in invite-only online chatrooms about his desire to commit violent Jihad. Several of these writings included discussions of firearms. For example, on March 16, 2019, after defendant wrote that he wanted to seek "retribution" for the mass shooting at Mosques in Christchurch New Zealand, he wrote that he had taken out his AK-47 out and been keeping it by his bed.

On March 19, 2019, defendant exchanged messages with fighters in the Philippines about using guns to wage violent Jihad. After the fighters posted pictures of their firearms and wrote about in-fighting in the Philippines between ISIS, al-Qa'ida, and other groups, defendant wrote that he wished the groups would make peace and "fight as one." A fighter then posted more pictures of guns, and defendant wrote, "looks like a short barrel . . . I love short barrels soo much easier to carry." Defendant wrote that he was looking for a "short barrel ak47 with a foldable stock" which would be the "perfect guerilla weapon in my urban environment." Defendant then posted a picture of his AK-47 and wrote, "this is one of mine I own." A fighter replied by posting a picture of an M-14 firearm and wrote that he had taken it from a captured U.S. Navy Seal. Defendant replied, "captured seal? Alhamdullah.[1] Y didn't u gut him[?]" The fighter answered that he did not "think of it" and defendant replied, "next time inshallah."[2]

---

[1] Alhamdulillah is Arabic for "Praise Be to God."
[2] Inshallah is Arabic for "God willing."

2

On March 21, 2019, defendant wrote in the chatroom about how much he cared for his guns, and proposed that the fighters in the Philippines assassinate a military officer there. One of the fighters wrote that the officer was in the city of Davao, and wrote, "We blow up stuff in Davao before but he has a lot of Kaffir[3] bi Taghut[4] guarding him." Defendant replied, "catch him in transit on the road take out the lead and rear columns then move in for the slaughter." Defendant wrote, "do you take part in the raids urself? Sounds fun." A fighter shared a picture of himself with his M-14 firearm, and wrote that he used it to shoot soldiers. Defendant replied, "you['re] an inspiration. I have to follow ur example."

On March 23, 2019, defendant posted a picture in the chatroom of AK-47 magazines and wrote, "theres a rave in a town to the east. [S]hould i?" Fighters then posted pictures of their firearms and other weapons, including Improvised Explosive Devices ("IEDs"). Another participant wrote, "that's a lot of IEDs. Feel like putting them on a 4x4." Another replied, "in the road and detonate them on foot fighter AFP or vehicles of AFP/PNP[5]."

After defendant began meeting with the CHS to plan his intended terrorist attack, he continued to discuss using his firearms to help carry them out. In his first meeting with the CHS, on March 18, 2019, defendant proposed targeting Jews walking down the street, and

---

[3] "Kaffir," is an Arabic term for "infidels," or those who do not believe in Islam.

[4] Taghut is an Arabic term used to refer to opponents of the Prophet or those who worship something other than God, such as pagans of demons.

[5] AFP stands for Armed Forces of the Philippines, which is the official military of the Philippines. PNP stands for the Philippine National Police.

3

when the CHS said they might get caught, defendant replied, "It's better not to get caught.  Better not to be taken alive.  But [. . .] I have many magazines."  Defendant said he had nine AK magazines, five of which were loaded, and described the firearms that he owned and could use in connection with the attack.  Later in the same meeting, defendant suggested targeting police officers, and when the CHS expressed concern about conducting an attack using guns registered in defendant's own name, defendant said he used gloves to handle the bullets so his fingerprints would not appear on them.

On March 20, 2019, defendant sent the CHS a message online containing a photograph of an AK-style rifle with a foldable metal stock, an attached sling, and a detachable high-capacity ammunition magazine.  Defendant wrote that he had removed the "wooden stock" and "replaced it with wire" so that the rifle now had a "foldable stock" that could more easily be used for a "drive by" shooting.

On March 22, 2019, defendant met the CHS again and asked if the CHS saw his "AK," apparently referencing the photograph defendant had sent the CHS of his rifle.  Defendant spoke about some modifications he made to the rifle and said, "[s]o when we decide to act or when I decide to act, I can keep it, like, you know when it's the wood, it's gonna be like, you know, it's gonna be uncomfortable [. . .] in the car [. . .]  With the wire, you can fold it."  The CHS replied that defendant had just converted to Islam and was "so pure," and stated "You don't need to, like you don't have to do this.  You know that, right?  You're pure."  Defendant responded by pointing out a police car, stating "That's the police," and describing how police cars have bullet proof glass but police officers "roll their window down

sometimes," suggesting that he could use his modified AK-47 to conduct a drive-by shooting into a police car.

On April 19, 2019, defendant arrived to a meeting with the CHS wearing camouflage pants and holding a backpack containing an AK-47 style rifle partially covered by what appeared to be a shirt. When the CHS expressed surprise that he had brought the rifle, defendant replied "if we're going to commence fighting, jihad, yeah, . . . you gotta remain." Defendant later said he brought the gun because "I just wanted to show you that I'm serious." Defendant then proposed starting their string of attacks that night, but said to the CHS, "You're not ready, huh? You're not ready." Later that night, defendant brought up the upcoming rally in Long Beach on April 28, 2019, and suggested they could conduct a drive-by shooting, stating, ""Parking's gonna be an issue. We could do hit and run [. . .] We drive by, we empty a magazine or two. An AK. And we book it." The CHS asked, "but you said the IED will do more damage?" Defendant replied that "the IED will do more damage," and "we can make it before. It's coming up. We have two weeks [. . .] ask your brother. Ask the brother." The CHS said "so if we make it before, we can actually-[.]" Defendant interrupted and said "Detonate. Yes we can detonate it in a crowd. Which would be perfect." Later in the meeting, defendant reaffirmed that he would prefer to use IEDs rather than firearms, stating, "I want to do the IED route, which is somewhat the better idea. An IED will do a lot more damage crowd wise . . . So if the IED thing is sounding more serious and a better plan than going spraying and praying."

On April 23, 2019, defendant proposed using his AK-47 in connection with the IEDs, saying the CHS and UC should leave the

5

scene after the explosion, and that he would bring his gun and was not afraid to die a martyr.

### B. Category Two: Defendant's Statements to a Colleague Regarding His Desire to Commit Mass Casualty-Attacks

In February or March 2019, according to defendant's former colleague and friend J.G., defendant told J.G. about his conversion to Islam, told him that he watched videos of beheadings, and told him about his desire to commit mass violence, stating on one occasion, "I want to do mass murders."[6]

### C. Category Three: Defendant's Consumption of ISIS Propaganda

As discussed in the government's Opposition to defendant's Motion to Exclude Violent Materials (Dkt. 85), defendant's cell phone, computers, and social media records show that both before and during his attack planning in this case, defendant regularly consumed ISIS propaganda, including by visiting Websites and chatrooms documenting and glorifying ISIS's activities.[7]

**III. ARGUMENT**

### A. Defendant's Statements About Firearms and Committing Mass Murder, and His Consumption of Violent ISIS Propaganda Are Probative of Knowledge, Motive, and Intent

Defendant's statements and actions in March and April 2019 related to ISIS, committing mass murder, and using firearms in connection with a mass-casualty attack are admissible not as other acts under Rule 404(b), but as direct evidence of defendant's intent

---

[6] The government does not intend to call in its case in chief the "love interest" defendant identified (Mot. at 3) to whom defendant spoke about his hatred of Jews, his desire to fight in the Middle East, and his desire to commit acts of violence.

[7] The government does not intend to introduce Web History regarding an "LGBT pride parade."

6

to commit the charged crimes.[8]  These contemporaneous statements and actions are "directly related to, or inextricably intertwined with, the crime charged in the indictment."  United States v. Lillard, 354 F.3d 850, 854 (9th Cir. 2003); See United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) ("Evidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined."); United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995) (holding that evidence is admissible as "inextricably intertwined" when it is "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime" and explaining that "it is obviously necessary in certain cases for the government to explain . . . the events surrounding the commission of the crime").

Defendant's argument that statements indicating his desire to commit a mass-casualty attack and to use firearms in connection with that attack are not relevant because he ultimately chose a different weapon is unavailing.  Defendant is charged with a violation of 18 U.S.C. § 2339A (Providing Material Support to Terrorists) and 18 U.S.C. § 2332a(a)(2) (Attempted Use of a Weapon of Mass Destruction).  For count one, the government is required to prove that defendant

---

[8] The government informed defense counsel of its theory of admissibility in its May 4, 2020 notice, stating, "The government intends to seek admission of the following categories of evidence to rebut the defense of entrapment and demonstrate your client's predisposition and lack of inducement to commit the charged offenses. In the alternative, the government intends to seek admission of the following categories of evidence as inextricably intertwined with the charged conduct.  Nonetheless, out of an abundance of caution, the government hereby provides notice that, in the alternative, the following categories of evidence would also be admissible pursuant to Rule 404(b) to prove motive, intent, preparation, and planning to commit the charged offenses."

7

provided material support or resources "knowing or intending" that they be used in furtherance of a crime of terrorism, namely 18 U.S.C. § 2332a(a)(2). For count two, the government is required to prove that defendant "attempted" to and "intended" to use a weapon of mass destruction and made a substantial step in furtherance of commission of that crime. Defendant's statements are probative of his intent to commit a mass-casualty attack. That he had not yet settled on the specific weapon to use at the time of those statements, and ultimately chose to use IEDs instead of a firearm, does not render his statements regarding his desire to commit an attack irrelevant. Furthermore, while he ultimately chose to attack the Long Beach rally using IEDs, he continued to plan to bring his AK-47 to the attack so that he could use it in connection with the attack if necessary.

With respect to defendant's consumption and promotion of ISIS propaganda (Mot. at 11-12), the government previously explained why this evidence is probative of intent in its Opposition to defendant's Motion to Exclude Violent Materials (Dkt. 85). As the government set forth in that brief, defendant acknowledged in conversations with associates that his viewing of ISIS propaganda inspired him to engage in violent Jihad, he shared the propaganda along with comments in which he expressed admiration for ISIS and support for their activities, and he specifically played ISIS propaganda for the CHS during their meetings to plan the attack in this case. Admission of such evidence is regularly admitted over Rule 401 and Rule 403 in terrorism prosecutions, especially those in which the government intervened before the defendant could carry out a mass causality attack. (See Dkt. 85 at 8-9 (citing authorities)).

### B. The Danger of Unfair Prejudice Does Not Substantially Outweigh the Probative Value of the Evidence

As set forth in the government's oppositions to defendant's similar motions to exclude violent materials (Dkt. 85 at 11-14) and statements (Dkt. 96 at 10-11), the evidence identified above is not unfairly prejudicial merely because it contains offensive language. Under Rule 403, generally "[e]vidence will not be excluded as unduly prejudicial when it is not more inflammatory than the charged crime." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999). Here, defendant is charged with providing material support to, and attempting to commit, a horrifically violent attack. His recorded statements explaining his desire to commit mass-casualty attacks and his consumption of ISIS propaganda glorifying such attacks are not more inflammatory than the actions he took to attempt to carry out the attack. See United States v. Mostafa, 16 F. Supp. 3d 236, 257 (S.D.N.Y. 2014) ("While it is prejudicial that the defendant has stated that he supports violent jihad, this is similar to, and no more prejudicial than, the crimes with which he has been charged.")

While defendant seeks to exclude evidence of ISIS propaganda videos, courts have repeatedly held that evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact. United States v. Goseyun, 789 F.2d 1386, 1387 (9th Cir. 1986) (affirming admission of photograph of victim's beaten body as to show cause of death and willful, deliberate and premeditated nature of the murder); United States v. Brady, 579 F.2d 1121, 1129 (9th Cir. 1978) (holding that graphic murder photographs are inadmissible "only when the picture is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury");

United States v. Salameh, 152 F.3d 88, 123 (2d Cir. 1998) (affirming admission of "shocking" photographs of people killed in bombing, including photograph of pregnant victim).

Here, defendant's statements and actions about committing mass-casualty attacks, and his consumption of ISIS propaganda, are highly probative of his knowledge, motive, and intent to commit the charged crimes, and their probative value is not substantially outweighed by the risk of prejudice under Rule 403.

### C. Defendant's Statements About Firearms and Committing Mass Murder, and His Consumption of Violent ISIS Propaganda Are Admissible to Rebut an Entrapment Defense

Finally, if defendant is permitted to present an entrapment defense, evidence about his preexisting desire to commit mass murder and his consumption and promotion of violent ISIS propaganda are admissible to establish that he was predisposed to commit the charged crimes and not induced to do so by government agents. See Ninth Circuit Model Jury Instruction No. 6.2 (entrapment). Defendant's argument that such evidence is not properly admitted under Rule 404 is therefore beside the point. As discussed above, the government is not proffering the evidence as "other acts" under Rule 404(b), but as direct evidence of his predisposition and lack of inducement.

While Rule 404 generally precludes "evidence of character, or of prior bad acts" to prove a defendant's propensity to commit the crime in question, "[w]hen the defendant raises an entrapment defense, however, such evidence becomes relevant. . . . The character of the defendant is one of the elements—indeed, it is an essential element—to be considered in determining predisposition." United States v. Mendoza-Prado, 314 F.3d 1099, 1103 (9th Cir. 2002); see also United States v. Chant, Nos. CR94-1149(SBA), CR94-0185, 1997 WL 231105, *6

10

(N.D. Cal. Apr. 4, 1997) ("Where entrapment is alleged, a prosecutor may meet his burden of establishing beyond a reasonable doubt that the defendant was not entrapped 'by showing through inquiry into the defendant's record of conduct and reputation that he was predisposed to commit the crime and was not an otherwise innocent person who would not have committed the crime but for the inducement" (quoting Pulido v. United States, 425 F.2d 1391, 1393 (9th Cir. 1970)); United States v. Segovia, 576 F.2d 251, 252 (9th Cir. 1978) (holding that prior convictions are admissible to rebut an entrapment defense so long as they are "sufficiently similar to the acts charged in the indictment to be relevant to the issue of appellant's predisposition to commit those acts").

The most important factor courts consider to determine whether a defendant was predisposed to commit an offense is whether the defendant was reluctant to commit the offense. See United States v. Busby, 780 F.2d 804, 807 (9th Cir. 1986). Here, defendant's statements regarding his desire to commit mass-casualty attacks and firearms to do it, as well as his consumption and promotion of ISIS propaganda, show that defendant not only lacked reluctance, he was radicalized and inspired to commit mass-casualty terrorist attacks like the attack charged in this case well before he ever met a government agent. Accordingly, if defendant is permitted to raise an entrapment defense, the government must be permitted to rebut it with the evidence identified above.

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion to exclude other acts evidence.