AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. 19-313-SVW <br><br> **MR. DOMINGO'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO ADMIT POST-ARREST STATEMENTS** |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Angela C. C. Viramontes, hereby files his reply to the government's opposition to Mr. Domingo's motion to admit his post-arrest statements.

          Respectfully submitted,

          AMY M. KARLIN
          Interim Federal Public Defender

DATED: June 29, 2020        By  */s/ DAVID I. WASSERMAN*
                                      DAVID I. WASSERMAN
                                      ANGELA C. C. VIRAMONTES
                                      Deputy Federal Public Defenders
                                      Attorney for MARK DOMINGO

## I. INTRODUCTION

The government fails to acknowledge that Mr. Domingo's motivations and intent vis-à-vis the instant offense were fluid throughout his communications with the CHS. It wants the jury to believe that the only reason Mr. Domingo committed the instant offense was because he was devoted to Islam. But this is only half the story. The Court should admit the proffered post-arrest statements as they are both consistent with a variety of Mr. Domingo's pre-arrest statements and add necessary context to the selectively excerpted statements proffered by the government.

## II. ARGUMENT

### A.   The totality of Mr. Domingo's statements.

In its description of Mr. Domingo's statements, the government once again selects only those statements indicating that Mr. Domingo committed the offense because of his feelings regarding the "West's" treatment of Muslims and his putative-desire for civil unrest. Dkt. 87 (Gov't Opp.) at 3-4 (describing statements). But its opposition ignores other statements – many of which it intends to admit at trial – made contemporaneously that suggest a different motivation. For example, on March 22, Mr. Domingo tells the CHS that his family rejected him due to his conversion to Islam and that people, in general, do not care about him. USAO_1606; 1640. On March 27, Mr. Domingo explains that he wants to commit an attack because no one has love for him and he feels as if he no longer has a family. USAO_1724-1725. And throughout his conversations with the CHS, Mr. Domingo laments the drama in his love life. Even on April 23 – the night Mr. Domingo meets the UCE for the first time – he tells the CHS how his love life is in shambles. Mr. Domingo's conversations with the CHS and UCE are replete with references to how Mr. Domingo's life is falling apart around him, as well as statements indicating that Mr. Domingo wanted to wait until after Ramadan to commit an attack. *See* USAO_9975-9976. These pre-arrest statements are then echoed in Mr. Domingo's post-arrest interview.

**B.     The proffered post-arrest statements add necessary context, are corroborated by Mr. Domingo's prior statements to the CHS, and their admission under the rule of completeness prevents the government from misleading the jury.**

Mr. Domingo's post-arrest statements, accurately identified by the government in its opposition, are consistent with his pre-arrest statements and add necessary context to the government's excerpts. Although it may be true that Mr. Domingo chose the Long Beach rally because it was "convenient," it is also true that the CHS pressured Mr. Domingo to go forward with the attack rather than wait until after Ramadan. The calls and conversations between the CHS and Mr. Domingo make this clear. The government cannot escape this inconvenient truth and failing to make this clear to the jury is misleading. The defense's proffered addition to excerpt one should be admitted.

So too should the Court admit the proposed addition to excerpt three. There, FBI agents ask Mr. Domingo why he committed the instant offense and what sort of message he wanted to send. Mr. Domingo flippantly responds: "I mean, besides the whole, bring terror and fear to the infidel, yada yada, yada, besides the whole drumbeat, it was just convenient." *Yada, yada, yada*. The proposed addition makes clear that Mr. Domingo was at his wits' end and that this motivated his decision to commit the attack: "I just wanted a break because my life's been kinda crashing around me." The government wants the jury to believe Mr. Domingo committed this offense in the name of Islam because it fits its narrative, not because it is a complete and accurate version of events. The jury has a right to hear an alternate narrative that is consistent with Mr. Domingo's pre-arrest statements so as to prevent the government from misleading the jury.

Excerpts six, seven, and eight also provide important context that complicates the government's narrative. In each of these statements, the government attempts to simplify the motive for the instant offense as "standing up" for Islam when others would not. But interspersed between Mr. Domingo's statements about "getting back at

the world" and "standing up for Sunni Islam" when others refuse are specific details about the demise of his life. He talks about how he was recently laid off from his job and that his girlfriends left him – each of which he repeatedly discussed with the CHS prior to his arrest. At this point in the interview the FBI agents try to steer the conversation back to Mr. Domingo's putative-anger about the New Zealand Christchurch shooting. But Mr. Domingo continues, discussing how his family did not take too kindly to his conversion and ruined his romantic relationship. Finally, Mr. Domingo's discussion of his family, difficulties going through puberty, his former hatred of Islam, and service in the United States Army, all provide important context for his motivations in this case.

The rule of completeness requires admission of the proffered statements. The proposed additions show the FBI agents' attempts to craft the government's Islam-focused trial narrative while also providing a more complete and accurate picture to the jury of who Mr. Domingo is and why he decided to commit the instant offense. If the Court excludes statements which account for the complex reasoning and motivations underlying Mr. Domingo's actions, the government will be permitted to present a one-sided, false narrative about how the instant offense came to fruition.

**C.    Statements regarding Mr. Domingo's complex motivations are statements against interest and should be admitted.**

There is nothing exculpatory about the defense's proposed additions. The proffered reasons for Mr. Domingo's conduct – that Mr. Domingo hates the world because of perceived lifelong slights against him – are no more sympathetic than him hating the world because of perceived slights against Muslims. Both evince sufficient motivation to commit the charged offense and are, therefore, inculpatory. Moreover, because the government has charged Mr. Domingo with providing material support to terrorists via the *attempted* use of a weapon of mass destruction, his statements regarding motivation and timing fail to exculpate him. The evidence should be admitted as statements against penal interest.

**D.     Mr. Domingo's statements are reliable, corroborated, and should be admitted under the residual exception to the hearsay rule.**

Mr. Domingo's post-arrest statements to FBI agents echo his pre-arrest statements to the CHS and UCE.  Throughout his interactions with the CHS, Mr. Domingo lamented the course of his life, his family-troubles, his problems with women, and the fact that he felt like the world had dealt him a raw deal.  He made these statements with the understanding that he could trust the CHS and UCE as his Muslim brothers.  It would be disingenuous for the government to claim that Mr. Domingo was being truthful with the CHS when he spoke of Islam, but not when he spoke about anything else.  It is untrue that Mr. Domingo presented a "more sympathetic story to the arresting agents regarding his motivation."  He told them the same things he told the CHS and UCE in the days and months leading up to the instant offense.  Mr. Domingo's post-arrest statements are indicative of motive, are just as probative as the government's proffered statements, and their admission lies in the interests of justice.  His story never changed and the jury is entitled to hear it.  The Court should grant Mr. Domingo's motion.

## III.  CONCLUSION

Based on the foregoing, the Court should grant Mr. Domingo's motion to admit his post-arrest statements (Dkt. 76).

AMY M. KARLIN
Interim Federal Public Defender

DATED: June 29, 2020         By  /s/ DAVID I. WASSERMAN
DAVID I. WASSERMAN
ANGELA C. C. VIRAMONTES
Deputy Federal Public Defenders
Attorney for MARK DOMINGO