AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. 19-313-SVW <br><br> **MR. DOMINGO'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO EXCLUDE OFFENSIVE AND GRAPHICALLY VIOLENT MATERIALS** |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Angela C. C. Viramontes, hereby files his reply to the government's opposition to Mr. Domingo's motion to exclude offensive and graphically violent materials.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED: June 29, 2020     By /s/ *DAVID I. WASSERMAN*
DAVID I. WASSERMAN
ANGELA C. C. VIRAMONTES
Deputy Federal Public Defenders
Attorney for MARK DOMINGO

1

## I. INTRODUCTION

Throughout the government's briefing it has confused the issue of Mr. Domingo's possession of materials related to a terrorist organization and the charges in this case – providing material support for terrorists via the attempted use of a weapon of mass destruction. Nowhere in the jury instructions for the charges at bar does it require the government to prove that Mr. Domingo aided, assisted, or acted with the intent to further the aims of any particular terrorist organization. Nonetheless, the government erroneously contends that the videos, songs, and images seized from his cell phone and computers demonstrate his predisposition, motive, and intent to commit an attack. Not so. None of the evidence is probative to Mr. Domingo's predisposition, motive, or intent to *use a weapon of mass destruction*. That Mr. Domingo may have wanted to commit some sort of generalized attack is simply not enough to carry the government's burden. The evidence should be excluded.

## II. ARGUMENT

**A.     The proffered evidence is not probative of predisposition, motive, or intent to use a weapon of mass destruction and must be excluded.**

The government claims that the proffered evidence is necessary to prove Mr. Domingo acted with knowledge, without mistake, and with the intent to carry out a mass-casualty attack. But the government fails to articulate how merely watching violent acts or listening to songs that glorify violence is probative of an intent to commit such acts. And the fact that the proffered videos and songs use Arabic words that Mr. Domingo also used is not a reason to admit the evidence. These two arguments would justify the admission of *any* film in *any* case in which a defendant watched the movie and said words used in the movie. That Mr. Domingo consumed such media does little to show that he wanted to engage in such conduct or that he

evinced a specific intent to commit the charged offense on the specific date and time charged.[1]

Furthermore, the images Mr. Domingo possessed similarly fail to prove a fact of consequence. The government wants to show the jury approximately 48 photos found on Mr. Domingo's laptop and phone. These photos depict a range of content: from ISIS-fighters holding flags and riding on horseback to satirical memes about Islam and derisive statements about Jewish people. There are also homophobic photographs, misogynistic statements, and racist depictions of Black people. Once again, however, Mr. Domingo is not charged with providing material support to ISIS, nor is he charged with having or espousing offensive viewpoints. None of the images evince his motive, knowledge, or intent to commit the *charged offense*. Because none of these photographs make a fact of consequence more or less probable in this case, they should be excluded.

**B.  The cases cited by the government are inapposite in light of the differential facts at bar.**

The government cites six cases in support of its contention that admission of ISIS propaganda is necessary to prove Mr. Domingo's intent. But the admission of evidence in each of these cases rested on the assumption that the defendant proffered some sort of innocent intent in explaining his actions, something Mr. Domingo will not be contending at trial.

In *United States v. Elhuzayel*, 807 Fed.Appx. 621 (9th Cir. 2020) (unpublished), the images at issue were relevant to the contested issue of intent because they rebutted the defendant's arguments that the purpose of his planned travel to the Middle East was not to join the Islamic State, *but rather simply for a wedding*. Similarly, in *United*

---

[1] The government also contends that the proffered evidence is necessary to prove intent since Mr. Domingo will argue that he never in fact intended to carry out the attack. Not so. Evidence regarding his equivocal commitment to committing the charged offense is intended only to show that it was the CHS and UCE who persuaded and induced Mr. Domingo into committing the charged offense. As such, the government's contention must be rejected.

3

*States v. Mehanna*, 735 F.3d 32, 60-63 (1st Cir. 2013), the government's case depended on proving that the defendant's actions emanated from views that, over time, had aligned with al-Qa'ida's. As such, "[t]he media that he consumed en route to forming those views [was] a salient part of the story." *Id*. Both of these cases are inapt because Mr. Domingo is not charged with providing material support to a particular terrorist organization. As such, the government need not present any ISIS-related evidence to prove the charges at bar. Rather, it chooses to proffer this sort of evidence because it knows that it will sensationalize the trial.[2]

The government's citation to *United States v. El-Mezain*, 664 F.3d at 467, 507-11 (5th Cir. 2011), suffers from the same problem. There, the Fifth Circuit affirmed the admission of material seized from the defendant, "including images of violence and videos glorifying Hamas and depicting Hamas leaders [because they were] probative of the motive or intent of [the defendant] to support Hamas" – the designated terrorist organization defendant was charged with assisting. As noted above, Mr. Domingo is not charged with assisting any particular organization and, as such, evidence of ISIS propaganda serves no similar purpose in this case.

In *United States v. Abu-Jihaad*, 630 F.3d 102 (2d. Cir. 2010), the Second Circuit affirmed admission of Osama bin Laden's 1996 fatwa against the United States and depictions of violence which were limited and putatively-less gruesome than many seen on "nightly news dispatches from Baghdad." *Id*. at 132. Not so here. The evidence proffered by the government goes far beyond simple statements condemning the United

---

[2] Importantly, the First Circuit pointed out that the government's labelling of the defendant's crimes as "ideological" and its argument that, as a result, "his speech and beliefs, as well as the writings and videos that he consumed were integral to the charged crimes," was a sweeping proposition that it declined to accept. "Courts must be wary of the particular perils associated with prosecutions centered on ideology (which include, to use the government's phrase, prosecutions centered on "propaganda"). An objective observer might well regard the sprawling taxonomy suggested by the government as a thinly disguised effort to saddle defendants indiscriminately with the criminal and cultural baggage of internationally notorious terrorists. The government's embrace of such a theory smacks of overreaching, and we give that theory no weight." *United States v. Mehanna*, 735 F.3d 32, 60 (1st Cir. 2013).

States and includes video-footage of graphic beheadings, shootings, and murder. The evidence is more akin to a snuff-film than news dispatches on the nightly news. No amount of redaction can reduce the inflammatory impact this sort of evidence would have on a jury.

Finally, in *United States v. Hammoud*, 381 F.3d 316, 340-43 (4th Cir. 2004), the Fourth Circuit affirmed the admission of excerpts from terrorist propaganda videos found in the defendant's residence because he was charged with soliciting donations for the organization depicted in the videos. That is, unlike Mr. Domingo, the defendant was charged with assisting a designated terrorist organization. *Hammoud*, and the other cases cited by the government, do not support its proposition and should be rejected.[3]

**C.    The proffered evidence should be excluded under Rule 403 because the unfairly prejudicial nature of the evidence, the risk of confusing the issues, and the needless presentation of cumulative evidence substantially outweighs its probative value.**

As noted in Mr. Domingo's reply to the government's opposition to his motion to exclude statements, the cases cited by the government do not support its position.[4] Furthermore, the specific songs and videos need not be played for the jury. Rather, an agent can easily testify as to the content of this material and where it was found. Playing multiple videos and songs depicting graphically violent conduct – redacted or

---

[3] The government also cites *United States v. Mohamud*, 843 F.3d 420 (9th Cir. 2016), in support of its argument. But the Ninth Circuit did not analyze the issue raised by the government. Instead, that Court found defendant's entrapment defense "spirited and supportable." *Id.* at 430 (internal parenthetical omitted); *see also* Dkt. 96 (Mr. Domingo's opposition to the government's motion to exclude his entrapment defense) at 17 (citing *Mohamud*).

[4] The government also cites *United States v. Jayyousi*, 657 F.3d 1085, 1107-08 (11th Cir. 2011), where the court admitted a televised interview of Osama bin Laden. However, in that case the video was played only once for the jury and the government was precluded from asking questions about the video.

1 not – is unnecessary and creates a substantial risk of inflaming the jury, confusing the
2 issues, and causing unfair prejudice to Mr. Domingo. The evidence should be excluded.

**D.     Because the proffered evidence does not bear on Mr. Domingo's intent to use a weapon of mass destruction, it should not be admitted to rebut and entrapment defense.**

The entrapment defense in this case is based solely on the fact that, absent inducement by the CHS and UCE, Mr. Domingo would not have attempted to use *a weapon of mass destruction*. The evidence proffered by the government has nothing to do with weapons of mass destruction and has everything to do with presenting prejudicial evidence of an irrelevant terrorist organization to the jury. As such, the government should not be permitted to present this evidence to rebut Mr. Domingo's entrapment defense and it should remain excluded.

### III.  CONCLUSION

Based on the foregoing, the Court should grant Mr. Domingo's motion to exclude images and videos depicting graphic violence and offensive content (Dkt. 75).

                                    AMY M. KARLIN
                                    Interim Federal Public Defender

DATED:  June 29, 2020          By  */s/ DAVID I. WASSERMAN*
                                    DAVID I. WASSERMAN
                                    ANGELA C. C. VIRAMONTES
                                    Deputy Federal Public Defenders
                                    Attorney for MARK DOMINGO