AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. 19-313-SVW <br><br> **MR. DOMINGO'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO EXCLUDE STATEMENTS** |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Angela C. C. Viramontes, hereby files his reply to the government's opposition to Mr. Domingo's motion to exclude statements.

                                  Respectfully submitted,

                                  AMY M. KARLIN
                                  Interim Federal Public Defender

DATED: June 29, 2020        By  */s/ DAVID I. WASSERMAN*
                                        DAVID I. WASSERMAN
                                         ANGELA C. C. VIRAMONTES
                                         Deputy Federal Public Defenders
                                         Attorney for MARK DOMINGO

1

## I. INTRODUCTION

The government wants to admit statements Mr. Domingo made and propaganda he allegedly consumed to craft a frightening narrative for the jury even though Mr. Domingo is not charged with supporting a particular terrorist organization, espousing repulsive views, or having unpopular political beliefs. The admission of this highly prejudicial evidence – even in a terrorism trial – runs the risk of confusing the issues, causing unfair prejudice, and inflaming the jury in a way the substantially outweighs its probative value. As such, the evidence should be excluded.

## II. ARGUMENT

### A. Mr. Domingo's statements fail to prove motive, knowledge, or intent to commit the charged offense.

Throughout the government's motions it fails to acknowledge the simple truth that a desire to commit an offense via some generic means is not probative of motive, knowledge, or intent to commit the charged offense of providing material support for terrorists via the attempted use a weapon on mass destruction. Nowhere do the proffered statements about Jews, the need for Sharia law, his putative-support for ISIS or desire to provoke a civil war, evince a *knowledge* of how to use a weapon of mass destruction, the *intent* to use a weapon of mass destruction, or express a *motivation* to use a weapon of mass destruction. Rather, the generalized statements of disdain and hatred expressed in the government's proffer show merely that – disdain and hatred – devoid of any particularized means by which to enact those feelings.

Furthermore, statements by Mr. Domingo vis-à-vis the use of an IED on the freeway and his post-arrest statements are – once again – taken out of context by the government. As noted in Dkt. 96 at 3 (Mr. Domingo's opposition to the government's motion to preclude an entrapment defense), Mr. Domingo's statement about an IED stems from an online conversation about *someone else's use of an IED* – not Mr. Domingo's. The statement was not made in preparation for the use of an IED on a freeway in the United States. Similarly, Mr. Domingo's post-arrest statement to agents

2

about them putting a bullet in the head of someone who "wanted to kill Americans" is made in jest. A review of the entire statement – which is quoted by the government – makes this clear as he states "Heroic FBI raid kills extremist! Go men and women in blue! There, you secure funding and the love and adoration of all the fucking normies, who will continue to do drugs and gamble and all the other shit you guys don't want them doing." Dkt. 97 (Gov't Opp. at 8). To say that this statement evidences his intent to kill Americans ignores the context and sarcastic tone of the comment.

Finally, it matters little whether other courts have upheld the admission of similar statements to prove intent and motive in terrorism prosecutions. Instead, this Court must evaluate the specific nature and volume of the statements at issue in this case and determine whether this evidence is admissible. As noted here and in Mr. Domingo's opening brief, it is not and should be excluded.

**B.     The proffered evidence is far worse than the crime at bar and, as such, the danger of unfair prejudice substantially outweighs the probative value of the evidence.**

The government argues in its opposition that "[e]vidence will not be excluded as unduly prejudicial when it is not more inflammatory than the charged crime." Gov't Opp. at 10. But the crimes charged – material support for terrorists via the attempted use of a weapon of mass destruction – are not as inflammatory as evidence disparaging minorities and advocating their murder. In fact, the attempted use of a weapon of mass destruction by way of an FBI-sting operation is fairly benign when compared to the volume of offensive statements proffered by the government, particularly in the current climate of anti-racism in the United States.

Further, the cases cited by the government do not support its position. The defendant in *United States v. Mostafa*, 16 F.Supp.3d 236, 257 (S.D.N.Y. 2014), was charged with providing material support to *terrorist organizations* and *hostage taking*. And in *United States v. Mehanna*, 735 F.3d 32, 60-63 (1st Cir. 2013), the First Circuit affirmed the admission of Al-Qa'ida-related materials because the defendant was

3

1  charged with providing material support *to Al-Qa'ida*. Mr. Domingo, on the other
2  hand, is not charged with actually committing an act of violence, nor is he charged with
3  providing support to a notorious terrorist organization. As such, the evidence proffered
4  by the government in this case is more inflammatory than the charged offenses.

In *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999), the Second Circuit affirmed the admission of evidence that the defendant-police officer previously choked a suspect in a case where he was *accused of choking a different suspect*. In *United States v. Goseyun*, 789 F.2d 1386, 1387 (9th Cir. 1986), the Ninth Circuit affirmed the admission of a photograph of the dead body *at the center of a murder case* to show cause of death and prove the willful, deliberate and premeditated nature of the murder. Similarly, in *United States v. Brady*, 579 F.2d 1121, 1129 (9th Cir. 1978), pictures of the body in a *manslaughter trial* were admitted with approval. And in *United States v. Salameh*, 152 F.3d 88, 123 (2d Cir. 1998), the Second Circuit affirmed the admission of photographs of victims killed in a bombing the defendant was charged with committing. Conversely, Mr. Domingo is not charged with making offensive statements about Jews, his desire for Sharia law, his putative-support for ISIS, or a desire to provoke a civil war. He is charged with providing material support for terrorists by way of the attempted use of a weapon of mass destruction – nothing more, and nothing less. The government's proffered evidence should be excluded under Fed. R. Evid. 403.[1]

**C.    The proffered evidence does not properly rebut an entrapment defense.**

As made clear in Mr. Domingo's opposition to the government's motion to preclude an entrapment defense, the entrapment defense in this case is based solely on the fact that, absent inducement by the CHS and UCE, Mr. Domingo would not have attempted to use a weapon of mass destruction. The proffered evidence does not rebut

---

[1] In the event the Court does permit the government to admit evidence of the aforementioned topics, the Court must limit the volume of this evidence under Rule 403 as repeated introduction of these statements creates a substantial risk that there will be the cumulative presentation of evidence, undue prejudice, and a waste of time.

1  this fact.  None of the proffered statements have anything to do with weapons of mass destruction or their use in a mass-casualty attack in the United States.  As such, the government should not be permitted to present this evidence to rebut Mr. Domingo's entrapment defense and it should remain excluded.

**D.  Admission of pure-speech in a criminal case has a chilling effect and should weigh in favor of exclusion.**

Although relevant statements can generally be admitted in criminal cases, it is important for the Court to be cautious in admitting the government's proffered statements.  Introducing the proffered statements can cause a chilling effect such that people will be afraid to freely express themselves and exercise their First Amendment freedoms.  *See United States v. Waters*, 627F.3d 345, 355 (9th Cir. 2010) ("attempts to use [a defendant's choice of reading material] against a defendant must be viewed and reviewed with a careful and skeptical eye"); *United States v. Curtin*, 489 F.3d 935, 959 (9th Cir. 2007) (en banc) (Kleinfeld, J., concurring) ("We ought to be wary when the government wants to use what people read against them. Our freedom to read and think requires a high wall restricting official scrutiny"); *Mehanna*, 735 F.3d at 40 ("court[s] [must] patrol the fine line between vital national security concerns and forbidden encroachments on constitutionally protected freedoms of speech and association.")

### III.  CONCLUSION

Based on the foregoing, the Court should grant Mr. Domingo's motion to exclude statements (Dkt. 73).

                                              AMY M. KARLIN
                                              Interim Federal Public Defender

DATED:  June 29, 2020        By  */s/ DAVID I. WASSERMAN*
                                              DAVID I. WASSERMAN
                                              ANGELA C. C. VIRAMONTES
                                              Deputy Federal Public Defenders
                                              Attorney for MARK DOMINGO