AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
Deputy Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
(E-Mail: Angela_Viramontes@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. 19-313-SVW <br><br> **MR. DOMINGO'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO EXCLUDE OTHER ACTS EVIDENCE** |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Angela C. C. Viramontes, hereby files his reply to the government's opposition to Mr. Domingo's motion to exclude other acts evidence.

                                         Respectfully submitted,

                                         AMY M. KARLIN
                                         Interim Federal Public Defender

DATED: June 29, 2020        By  */s/ DAVID I. WASSERMAN*
                                           DAVID I. WASSERMAN
                                           ANGELA C. C. VIRAMONTES
                                           Deputy Federal Public Defenders
                                           Attorney for MARK DOMINGO

## I. INTRODUCTION

In Mr. Domingo's motion to exclude evidence at Dkt. 72, the defense contended that the proffered evidence was inadmissible *both as other acts* and as *inextricably intertwined*. Further, Mr. Domingo outlined why this evidence was irrelevant to the charged offenses and illustrated how its admission would violate the dictates of Federal Rule of Evidence 403. The government's opposition fails to adequately address why the defense's motion should not be granted. The Court should grant Mr. Domingo's motion.

## II. ARGUMENT

**A. Evidence of Mr. Domingo's statements regarding firearms and a generalized desire to commit attacks are not relevant to his motive, knowledge, or specific intent to use a weapon of mass destruction and instead create a substantial risk of undue prejudice and confusion of the issues.**

The government notes in its opposition that "Defendant's statements are probative of his intent to commit a mass-casualty attack. That he had not yet settled on the specific weapon to use at the time of those statements, and ultimately chose to use IEDs instead of a firearm, does not render his statements regarding his desire to commit an attack irrelevant." Dkt. 98 (Gov't Opp. at 8). It also notes that this evidence is probative of motive and knowledge. The government is simply incorrect.

First, the government's proffer is misleading. The government selectively omits conversations between the CHS and Mr. Domingo. It tries to frame Mr. Domingo's statements about firearms are part of a larger desire to use a weapon of mass destruction in a mass-casualty attack. Not so. As the totality of the conversations make clear, the CHS dissuades Mr. Domingo from using his firearms in favor of using a weapon of mass destruction. That Mr. Domingo persists in his desire to use a firearm *in addition* to the weapon of mass destruction proves this. *See generally* Dkt. 96 (Mr. Domingo's opposition to the government's motion to preclude an entrapment defense).

Second, the government must prove that Mr. Domingo harbored the specific intent to use a weapon of mass destruction. *Id.* Evidence that Mr. Domingo intended to commit a mass-casualty attack with a firearm, rather than with a *weapon of mass destruction*, is not probative of the charged offense. The gravamen of the charged offense is the means of attack – that is, the improvised explosive device. Admission of evidence regarding Mr. Domingo's plans vis-à-vis firearms not only diverts the jury's attention from the ultimate question (i.e., whether there was an intent to use a weapon of mass destruction), but also creates a scenario wherein the jury will convict Mr. Domingo because he wanted to commit a mass-casualty attack regardless of the means by which he chose to accomplish the act. This fact alone requires exclusion under Rule 403.

Third, Mr. Domingo's statements to colleagues are similarly inadmissible. The intent to commit a mass-casualty attack is not an element of the charged offense. In fact, the offenses charged do not require an intent to kill or injure. Rather, the specific intent required is that of using a specific type of weapon, *to wit*, a weapon of mass destruction. Thus, even if Mr. Domingo simply wanted to cause damage to the park and not to any person in it, he could still be found guilty of the instant offense. Thus, any statements to his former colleague about a desire to commit a mass-murder are irrelevant unless they are (a) more specific, and (b) relate to the use of a weapon of mass destruction as the means of doing so.[1]

Fourth, the government fails to articulate how the evidence is probative of knowledge. In fact, it is unclear what "knowledge" is proven by the admission of statements related to firearms or mass-murder. And Fifth, the proffered evidence is not "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," nor is "it [] obviously necessary. . . for the

---

[1] Based on its arguments in its opposition (Dkt. 98), it appears that the government has abandoned any proffer regarding Mr. Domingo's statements made to fellow soldiers or conduct he exhibited while in the military.

3

government to explain . . . the events surrounding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). The crime charged is the attempted use a weapons of mass destruction. All that is "necessary" for the government to prove its case is evidence of the contact between Mr. Domingo and the CHS, parts of their conversations regarding the planning of the Long Beach rally, the CHS's offer to find a weapon of mass destruction, Mr. Domingo's agreement to use a weapon of mass destruction with the CHS and UCE, the trip to the Long Beach park in question, and the arrest of Mr. Domingo while he possessed the inert bomb. Anything beyond this serves to sensationalize the trial in this case, thereby confusing the issues for the jury with irrelevant evidence and creating a substantial risk of unfair prejudice.

**B.     Mr. Domingo's possession and endorsement of ISIS propaganda is minimally probative and highly prejudicial.**

As noted by the defense in its reply to the government's opposition regarding violent materials, the cases it cites are inapt because the materials proffered in this case are worse than the charged offenses. Unlike in the cases cited by the government in its oppositions (Dkts. 85 and 98), where the charged offenses were violent in nature, resulted in actual death or injury, and the evidence consisted predominantly of evidence related to that death or injury, there was no actual death or bodily injury in the case at bar. Instead, the government wants to show the jury evidence of what *might have happened* had this not been an FBI-sting. In doing so, the government will needlessly inflame the jury and insinuate that if they do not convict Mr. Domingo, bloodshed and death is what could happen if he walks free. If the existence of this evidence is necessary, the government can simply have an agent testify as to its content and Mr. Domingo's possession and endorsement of such materials. But the gratuitous display of the violent depictions in this case – with or without redaction – is impermissible and should be rejected.

**C. Even if the Court admits the government's evidence to rebut an entrapment defense, this evidence should be limited in volume and scope.**

To the extent the Court permits the government to rebut an entrapment defense with the evidence referenced in the government's opposition, the Court should limit the volume of evidence the government can use in order to avoid the introduction of needlessly cumulative evidence. Furthermore, if the government is permitted to use the aforementioned evidence, the defense must be able to rebut this motive evidence with evidence suggesting that this attack was motivated by Mr. Domingo's generalized disdain for society and his feelings of rejection, worthlessness, and hopelessness. The government should not be permitted to provide the jury a one-sided, incomplete view of Mr. Domingo's thoughts and conduct.

### III. CONCLUSION

Based on the foregoing, the Court should grant Mr. Domingo's motion to exclude other acts or putatively-inextricably intertwined evidence as outlined in Dkt. 72.

                                            AMY M. KARLIN
                                            Interim Federal Public Defender

DATED: June 29, 2020        By  /s/ DAVID I. WASSERMAN
                                            DAVID I. WASSERMAN
                                            ANGELA C. C. VIRAMONTES
                                            Deputy Federal Public Defenders
                                            Attorney for MARK DOMINGO