CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ANGELA C. C. VIRAMONTES (Bar No. 228228)
LISA SHINAR LABARRE (Bar No. 246429)
Deputy Federal Public Defenders
(E-Mail:  Lisa_Labarre@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARK DOMINGO,<br><br>                    Defendant. | Case No. CR 19-313-SVW<br><br>**MOTION TO COMPEL DISCOVERY RELATED TO CONFIDENTIAL HUMAN SOURCE**<br><br>Hearing Date:  January 19, 2021<br>Hearing Time:  11:00 a.m. |

Defendant Mark Domingo, by and through his attorneys of record, Deputy Federal Public Defenders Angela C. C. Viramontes and Lisa Shinar LaBarre, hereby move this Honorable Court to order the government to comply with its discovery obligations regarding the confidential human source ("CHS") in this matter.

///

///

///

///

///

///

1      This motion is based upon the attached memorandum of points and authorities,

2  exhibits, all files and records in this case, and any further evidence and argument as

3  may be presented at the hearing on this motion.

4

5                                    Respectfully submitted,

6                                    CUAUHTEMOC ORTEGA
                                     Federal Public Defender
7

8  DATED: December 21, 2020      By   /s/ Lisa Shinar LaBarre

9                                      LISA SHINAR LABARRE
                                       ANGELA C. C. VIRAMONTES
10                                     Deputy Federal Public Defenders

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ..................................................................................... 1

II.     ARGUMENT............................................................................................ 2

    A.      The Government's Expansive Disclosure Obligations ................... 2

    B.      The Government Should be Ordered to Produce the
          Requested Material Regarding the Informant ................................ 4

          a.      Prior Criminal Record and Activity ..................................... 6

          b.      Monetary Payments and Other Benefits................................ 6

          c.      Prior False Statements and Representations........................... 7

          d.      Other Information ................................................................. 8

III.    CONCLUSION ...................................................................................... 11

## TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

*Bagley v. Lumpkin,*
    798 F.2d 1297 (9th Cir. 1986) .......................................................................... 8

*Benn v. Lambert,*
    283 F.3d 1040 (9th Cir. 2002) ....................................................................... 7, 8

*Brady v. Maryland,*
    373 U.S. 83 (1963) ....................................................................................... 3, 9

*Carriger v. Stewart,*
    132 F.3d 463 (9th Cir. 1997) ............................................................................ 8

*Giglio v. United States,*
    405 U.S. 150 (1972) ............................................................................... 3, 5, 7, 9

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ..................................................................................... 3, 10

*Roviaro v. United States,*
    353 U.S. 53 (1957) ....................................................................................... 3, 4

*Silva v. Brown,*
    416 F.3d 980 (9th Cir.2005) ............................................................................. 3

*Singh v. Prunty,*
    142 F.3d 1157 (9th Cir. 1998) ................................................................... 7, 9, 10

*United States v. Bernal–Obeso,*
    989 F.2d 331 (9th Cir. 1993) .............................................................. 3, 5, 6, 7

*United States v Brumel-Alvarez,*
    991 F.2d 1452 (9th Cir. 1992) .......................................................................... 8

*United States v. Cutler,*
    806 F.2d 933 (9th Cir. 1986) ............................................................................ 6

*United States v. Doe,*
    705 F.3d 1134 (9th Cir.2013) ........................................................................ 4, 5

*United States v. Feil,*
    2011 WL 1399242 (N.D. Cal. 2011) ................................................................. 4

*United States v. Hernandez Meza,*
    720 F.3d 760 (9th Cir. 2013) ....................................................................... 2, 8

i

# TABLE OF AUTHORITIES

**PAGE(S)**

*United States v. Jennings*,
   960 F.2d 1488 (9th Cir. 1992) ........................................................ 5

*United States v. Kojayan*,
   8 F.3d 1315 (9th Cir. 1993) .......................................................... 7

*United States v. Miller*,
   529 F.2d 1125 (9th Cir. 1976) ....................................................... 9

*United States v. Montgomery*,
   998 F.2d 1468 (9th Cir. 1993) ....................................................... 5

*United States v. Price*,
   566 F.3d 900 (9th Cir. 2009) ........................................................ 6

*United States v. Santiago*,
   46 F.3d 885 (9th Cir. 1995) ......................................................... 8

*United States v. Shaffer*,
   789 F.2d 682 (9th Cir. 1986) ..................................................... 6, 9

*United States v. Soto–Zuniga*,
   837 F.3d 992 (9th Cir. 2016) ........................................................ 2

*United States v. Spires*,
   3 F.3d 1234 (9th Cir. 1993) ....................................................... 3, 4

*United States v. Stever*,
   603 F.3d 747 (9th Cir.2010) ......................................................... 2

*United States v. Van Brandy*,
   726 F.2d 548 (9th Cir. 1984) ........................................................ 9

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 524 ......................................................................... 6

Fed. R. Crim. P. 16 .................................................................. 2, 5

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mark Domingo is charged with attempting to use a destructive device to attack a rally in Long Beach, California on April 26, 2019.  The heart of the government's case is Mr. Domingo's communications with a confidential human source (also referred to as the "informant") working at the behest of the FBI.[1]  As this Court is well-aware, over the course of several weeks the CHS interacted with Mr. Domingo at length, through Internet message boards, text messages, phone calls, and finally, in-person meetings.  The defense will argue that Mr. Domingo was entrapped into committing the attempted bombing by the CHS, and this Court has approved this defense in its order dated August 18, 2020.  (Dkt. no. 150.)

As such, the interactions between Mr. Domingo and the CHS are critical to the defense and the defense of entrapment.  Yet the defense has nearly *no* information as to this CHS.  All that is known about the CHS is that he has worked with the FBI since approximately August 2013, and that he has been paid $304,524 for his services, information that was cited in the publicly filed complaint. (Dkt. no. 1.)  The defense does not know the CHS's name, other cases he has worked on, other cases where he has testified, and other benefits that he may have received as a result of his cooperation.

The government has fiercely protected the CHS's identity and has thoroughly redacted all identifying information of the CHS in discovery, even by concealing his face when he appears in an covertly produced video.  Defense counsel made a request for discovery related to the CHS on May 28, 2019, and again on September 24, 2020, but has yet to receive any information relating to the CHS's cooperation with law enforcement.  (Exhibits A, B, defense discovery requests.)  The CHS is not only a

---

[1] Discovery indicates the possible involvement of more than one CHS/informant in this matter.  This instant motion extends to *any and all* informants cooperating with law enforcement in this matter.

1

1  critical witness in this case: he is the entire source of the government's criminal case

2  against Mr. Domingo.  Mr. Domingo is entitled to discovery regarding this key witness,

3  and the Court should order its disclosure.

4  # II. ARGUMENT

5  ## A.   The Government's Expansive Disclosure Obligations

6        Federal Rule of Criminal Procedure Rule 16(a) "grants criminal defendants a

7  broad right to discovery."  *United States v. Stever*, 603 F.3d 747, 752 (9th Cir.2010).

8  Rule 16 requires that the government provide the defense with all material in the

9  Government's possession, custody, or control if the item is "material to preparing the

10  defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  "Materiality is a 'low threshold; it is

11  satisfied so long as the information ... would have helped' to prepare a defense."

12  *United States v. Soto–Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016).  Indeed,

13  "[i]nformation is material even if it simply causes a defendant to 'completely abandon'

14  a planned defense and 'take an entirely different path.'"  *United States v. Hernandez*

15  *Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (quoting *United States v. Doe*, 705 F.3d 1134,

16  1151 (9th Cir.2013)).

17        Nothing more than a simple request is needed to trigger the defendant's right to

18  discovery:

19        A defendant need not spell out his theory of the case in order to obtain
      discovery.  Nor is the government entitled to know in advance specifically
20        what the defense is going to be.  The relevant subsection of Rule 16 is
      written in categorical terms:  Upon defendant's request, the government must
21        disclose any documents or other objects within its possession, custody or control
      that are "material to preparing the defense."

22

23  *Hernandez-Meza*, 720 F.3d at 768.  At the same time, the burden on the Government is

24  heavy:  "Lack of knowledge or even a showing of due diligence won't excuse non-

25  compliance."  *Id*.  As the Ninth Circuit admonished, "[i]t thus behooves the government

26  to interpret the disclosure requirement broadly and turn over whatever evidence it has

27  pertaining to the case."  *Id*.

28

2

Furthermore, the Constitution imposes a duty on the government to turn over evidence favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[T]he government violates its constitutional duty to disclose material exculpatory evidence where (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir.2005) (citing *Strickler v. Green*, 527 U.S. 263, 281–82 (1999)). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the rule of Brady. *Giglio v. United State*s, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf" and disclose it to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

Information about informants is a particular subset of evidence that is critical to ensuring a fair trial for a defendant. "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom." *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).

Although "the government has a limited privilege to withhold an informant's identity," *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957)), that "privilege must give way … [w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61. In deciding whether disclosure is necessary, the Court must balance "(1) the extent to which disclosure would be relevant and helpful to the defendant's case, and (2) the government's interest in protecting the identity of a particular informant. In [making this determination,] the court must consider 'the public interest in protecting the flow of

3

information against the individual's right to prepare his defense.'"  *Spires*,  3 F.3d at 1238 (quoting *Roviaro*, 353 U.S. at 62).

Disclosure of an informant's identity may be necessary when the informant, as here, participated in or instigated the charged crime.  *Roviaro*, 353 U.S. at 64-65.  That was the circumstance in *Roviaro* itself:  the Court emphasized that the informant was a material witness for the defense because he "helped to set up the criminal occurrence and had played a prominent part in it."  *Id*. at 64 ("Disclosure of an informant's identity may be necessary when the informant participated in, or instigated the charged crime.");  *United States v. Feil*, 2011 WL 1399242, *2 (N.D. Cal. 2011) (citation omitted).

### B.    The Government Should be Ordered to Produce the Requested Material Regarding the Informant

The defense made its initial request for discovery relating to the informant on May 28, 2019.  Exhibit A.  That request was sufficient to trigger the government's discovery obligations.  The defense made a detailed follow-up request on September 24, 2020.  Exhibit B.  There are two reasons why the defense seeks information regarding the CHS.  First, the CHS establishes key aspects of the investigation.  He was party to the conversations and meetings leading up to the alleged criminal conduct.  Second, as has been briefed thoroughly in this matter, the CHS is critical to the entrapment defense.

The Ninth Circuit's decision in *United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013) is instructive here.  There, the defendant, who had previously acted as a government informant, sought discovery relating to a potential entrapment defense. The government refused to disclose the discovery and the district court denied a motion to compel.  On appeal, the Ninth Circuit reversed.  Even though the defendant ultimately decided not to pursue an entrapment defense at trial, the Ninth Circuit found that the district court still abused its discretion in refusing to order disclosure of evidence relevant to that potential defense.  As the *Doe* Court explained:

4

> The question is whether the information would have helped Doe in this endeavor, not whether the information would ultimately prove an entrapment defense. Even if the documents caused Doe to completely abandon the entrapment defense and take an entirely different path, the documents would still have been "material to preparing the defense" under Rule 16(a)(1)(E)(i).

*United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013).

As in *Doe*, the defense seeks evidence that may (or may not) support an entrapment defense. Because the defense has provided the Government with detailed, specific discovery requests relating to the informant, the Government must disclose the requested material.

The Ninth Circuit has observed that confidential informants seeking benefits from the government face "temptations to produce as many accused as possible" and that "[t]he use of informants . . . is fraught with peril." *United States v. Montgomery*, 998 F.2d 1468, 1472 (9th Cir. 1993) (quoting *Velarde-Villareal v. United States*, 354 F.2d 9, 13 (9th Cir. 1965) and *United States v. Bernal-Obeso*, 989 F.3d 331, 333 (9th Cir. 1993)). "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom." *Bernal-Obeso*, 989 F.2d at 333.

In this case it is critical that defense counsel have all the tools necessary to fully prove the informant's motives and to fully test his credibility. An important aspect of *Brady* and *Giglio* is that the government seek information beyond that of which the prosecutor personally is aware. The requirements of *Brady* and *Giglio* apply to the government as a whole, not just the prosecutor as an individual. *See Giglio*, 405 U.S. at 154; *United States v. Jennings*, 960 F.2d 1488, 1490-91 (9th Cir. 1992) and cases cited therein. Consistent with these cases, the prosecutor should be ordered to consult fully with both local law enforcement officers and federal agents who have dealt directly with the informant well as all other prosecutors who have used him. All information necessary to a full investigation and cross-examination should be provided.

5

### a.  Prior Criminal Record and Activity

To begin, the CHS's prior criminal record must be disclosed.  *See United States v. Price*, 566 F.3d 900, 911-12 (9th Cir. 2009); *Bernal-Obeso*, 989 F.2d at 333. This should include information about criminal activity which has not been the subject of arrests, charges, or convictions, such as information about assets acquired through criminal activity.  *See United States v. Shaffer*, 789 F.2d 682, 688 (9th Cir. 1986).  If the informant has failed to report income received for his work as an CHS or income from criminal activity on his tax returns, then that information must be provided as well.  *See id.*

### b.  Monetary Payments and Other Benefits

The government should also disclose all benefits of any sort, which have been provided to the CHS.  This includes not only all monetary payments received by the CHS, but also the following:

- Any information regarding any payments, whether monetary, expense, or otherwise, made to any CHS, including but not limited to copies of any pay sheets, payment requests, and vouchers in this or other cases;

- Any information regarding monies or expenses and any rewards paid to any CHS pursuant to 28 U.S.C. § 524(c)(1)(B), (C), or paid pursuant to state authority, in this or other cases;

- Any information regarding any payments, whether monetary, expense, or otherwise, made to the friends or family of any CHS in relation to his or her work as a confidential source in this or other cases;

- Any information or instructions given to any CHS regarding his or her obligation to pay taxes on money provided by the government;

- Copies of any written agreements that any CHS entered into concerning his or her status and work as a cooperating witness.

*See, e.g.*, *United States v. Cutler*, 806 F.2d 933, 935 (9th Cir. 1986); *Shaffer*, 789 F.2d at 688.

6

It also includes the details of any cooperation agreement and information as to what the Government did to satisfy its obligations under any such agreement. *See Giglio*, 405 U.S. at 154; *United States v. Kojayan*, 8 F.3d 1315, 1322 (9th Cir. 1993). Benefits of all types provided in connection with criminal cases must be disclosed. *See Benn v. Lambert*, 283 F.3d 1040, 1057 (9th Cir. 2002) (release from jail without being charged, dismissal of charge, and delay in issuance of warrant); *Singh v. Prunty*, 142 F.3d 1157, 1162 (9th Cir. 1998) (dismissal of charges, release on own recognizance, judge's statement considering cooperation at sentencing, and suspended and probationary sentences). Disclosure should include benefits which are going to be considered in the future as well as ones which have been promised or already provided.

### c. Prior False Statements and Representations

The Government should also disclose all known occasions on which the CHS has made false statements to any person, including, but not limited to, law enforcement officers or any law enforcement agency or court. *See Bernal-Obeso*, 989 F.2d at 333. This specifically includes, but is not limited to,

- Any aliases which the CHS may have used;
- Any false identification document which has ever been in the possession of and/or used by the CHS and each and every occasion on which the CHS is known to have used the document;
- Any information calling into question the credibility of any CHS and the details of any instances in which any CHS in this case has been discovered to have been untruthful or dishonest, including but not limited to cross-examination of the CHS, instances in which a warrant, complaint, or other charge based on the statements of the CHS was not issued or was rescinded or dismissed; and
- Any other facts that have come to the government's attention regarding the credibility of the CHS.

This information is relevant to the issue of the CHS's truthfulness and credibility. Further, the information about cooperation should include the length of time the CHS

7

has been providing information and the scope and extent of information that the CHS has provided.  It should include information about instances in which the CHS's assistance did not lead to a prosecution or in which the CHS falsely identified anyone who was or is a defendant in any case.  Such information is also necessary to a full investigation and determination of the reliability of the CHS.

### d.    Other Information

The defense is also entitled to any other evidence bearing on the CHS's credibility and/or motivations.  *See Benn*, 283 F.3d at 1055-56; *United States v Brumel-Alvarez*, 991 F.2d 1452, 1461-63 (9th Cir. 1992); *Bagley v. Lumpkin*, 798 F.2d 1297, 1300 (9th Cir. 1986).  The defense should therefore receive all information contained in any file or computer database which raises questions about the CHS's performance, reliability, or truthfulness. *Cf. Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (state had obligation to review witness's corrections file); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (BOP file sufficiently within United States Attorney's Office control). That information includes:

- Any evidence of any prior drug use and all information about the CHS suggesting or tending to show that he was under the influence of alcohol, narcotics, or other drugs either at the time he dealt with Mr. Domingo or at any other time since he started working as an CHS, *Benn*, 283 F.3d at 1056, and *Hernandez*, 608 F.2d at 746;

- All debriefing reports from the CHS;

- Any instructions given to the CHS regarding entrapment;

- All information regarding any expectations that the CHS may have at sentencing;

- All information regarding any promises of immunity, leniency, or preferential treatment in this or any other case;

- All information or records of actual or implied threats such as criminal investigation, prosecution, deportation, or exclusion made by the Government to the CHS or family or friends;

8

- All copies of any Presentence Reports or state probation reports regarding the CHS;
- All information regarding any of CHS's prior bad acts, including all records of arrests and convictions, and of activities which law enforcement officials investigated but did not prosecute;
- All information or records regarding intervention by federal or state law enforcement authorities to state regulatory agencies on behalf of CHS;
- All information regarding the seizure or threatened seizure of the CHS's assets;
- All information regarding any polygraph examination of the CHS, the results of those examinations, and questions asked during all polygraph examinations;
- All information regarding the mental impairment of the CHS;
- All statements of the CHS, including any rough notes of Government agents or police officers made in relation to any of those statements.

The Supreme Court's decision in *Brady* requires the Government to furnish the defendant with all favorable evidence relevant to the issue of guilt or punishment. *See Brady*, 373 U.S. at 87. The Ninth Circuit encourages a liberal construction of the *Brady* disclosure rule: "[A]n elemental sense of fair play demands disclosure of evidence that in any way may be exculpatory . . . . [T]he government should resolve all doubts in favor of disclosure . . . since disclosure could cause no harm to the Government while suppression could very well prejudice the defendant." *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976). Evidence impeaching the credibility of a Government witness falls under the *Brady* doctrine, of course. *See Giglio*, 405 U.S. at 153-55; *see also Shaffer*, 789 F.2d at 687. The fact that exculpatory evidence may concern the CHS does not relieve the Government of its burden under *Brady*. *See United States v. Van Brandy*, 726 F.2d 548 (9th Cir. 1984).

The Ninth Circuit emphasized the importance of impeachment material against informants in its decision in *Singh v. Prunty*, 142 F.3d 1157 (9th Cir. 1998). In *Singh*, the court granted the habeas petition of an inmate convicted of murder and solicitation

9

to commit murder.  *See id*. at 1158.  The prosecutor had failed to disclose material exculpatory evidence to the petitioner; specifically, the benefits an informant had received for his testimony.  *See id*. at 1159.  Despite considerable evidence of petitioner's guilt, the court in *Singh* found the failure to disclose the informant's benefits fatal to the State's case:

> [O]ur fundamental concern remains whether there exists a reasonable probability that given disclosure of the evidence of benefits to [the informant], one or more members of the jury would have viewed [the informant's] testimony in a different light. Given the importance of [the informant's] testimony to the prosecution's case, and the impact the disclosure of evidence of the benefits provided to [the informant] could have had on [his] credibility, we believe there is a reasonable probability that had the evidence been disclosed to the defense, one or more members of the jury could have viewed [the informant's] testimony differently.

*Id*. at 1163.

The CHS in this case is plainly as important as was the informant shielded by the prosecutor in *Singh*.  Despite the centrality of the informant and repeated requests for information from the defense, the government has not produced *any* information about this key percipient witness.  It is the government's obligation to affirmatively seek out evidence from the law enforcement officers who cooperated in this investigation; the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including law enforcement agents and the police.  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  The government thus has the obligation to interview the informant's supervising law handlers, chronicle their previous investigations, and produce all payment information.  *See id.*

1

## III. CONCLUSION

2       For all of the foregoing reasons, Mr. Domingo respectfully requests that the

3 Court order the Government to immediately comply with its discovery obligations and

4 produce all of the requested discovery relating to the CHS.

5

6                           Respectfully submitted,

7                           CUAUHTEMOC ORTEGA
Federal Public Defender

8

9 DATED: December 21, 2020    By  */s/ Lisa Shinar LaBarre*

10                           LISA SHINAR LABARRE
ANGELA C. C. VIRAMONTES

11                           Deputy Federal Public Defenders

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28