CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
LISA SHINAR LABARRE (Bar No. 246429)
(E-Mail: Lisa_Labarre@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. 19-313-SVW <br><br> **MR. DOMINGO'S SUPPLEMENTAL BRIEF REGARDING THE ADMISSION OF HIS POST-ARREST STATEMENTS** |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Lisa Shinar LaBarre, hereby files his supplemental brief regarding the admission of his post-arrest statements.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 9, 2021   By  /s/ DAVID I. WASSERMAN
DAVID I. WASSERMAN
LISA SHINAR LABARRE
Deputy Federal Public Defenders
Attorney for MARK DOMINGO

1

## I. INTRODUCTION

The government wants this case to be about Islamic terrorism. As a result, the government has moved to admit motive-evidence in the form of Islamic nasheeds, expert testimony about terrorist organizations, terrorist propaganda, and Mr. Domingo's post-arrest statements citing Islam as his motivation for committing the instant offense. The post-arrest statements proffered by Mr. Domingo – like those proffered by the government – speak to his motive to commit the charged offense, are corroborated by other evidence in the record, and were made under circumstances that indicate the statements' trustworthiness. "[I]in fairness[,]" Mr. Domingo's proffered statements "ought to be considered at the same time" as the post-arrest statements proffered by the government so as to clear up an "misunderstanding or distortion" regarding his motive for the jury. Fed. R. Evid. 106. As such, the Court should grant Mr. Domingo's motion.

## II. LAW

The legal standards for admitting statements against penal interest per Rule 804 and under Rule 807's residual exception are outlined in Mr. Domingo's motion to admit his post-arrest statements. *See* Dkt. 76. Put simply, this Court should answer two questions. First, do the proffered statements tend to incriminate Mr. Domingo, either by speaking to his motive to commit the instant offense or in some other way? Second, are the statements supported by corroborating circumstances that clearly indicate their trustworthiness? The Court should answer each of these questions in the affirmative.[1]

//
//
//
//

---

[1] For purposes of unavailability under Rule 804(a)(1), a defendant is unavailable if he invokes his Fifth Amendment right against self-incrimination.

### III. ARGUMENT

On April 9, 2021, the government filed an updated position regarding the post-arrest statements it intends to offer at trial. *See* Dkt. 196. Mr. Domingo's responses and argument are outlined below:

<u>Clip 1:</u>

In the government's supplemental brief, it has decided to delete the FBI agent's question to Mr. Domingo regarding the timing of the instant offense. *See* Dkt. 196 at 3. With that deletion, the agent's question "I just need to know, is there anyone besides your group that's looking to attack the rally in Long Beach?" is irrelevant and lacks probative value. As such, the government's proffered excerpt should be excluded under Rules 401 and 403.

<u>Clip 3</u>

The defense withdraws its request to play the proffered addition to Clip 3.

<u>Clips 6 and 7</u>

The defense has no objection to the government's withdrawal of Clips 6 and 7. Should the government change its position, then per the government's supplemental brief, the defense requests that the government play Mr. Domingo's proffered excerpt. *See* Dkt. 196 at 4:1-4.

<u>Clip 8</u>

In light of the Court's ruling that Mr. Domingo's military conduct shall be excluded from the trial, *see* Dkt. 139 at 3, the defense withdraws its request to play the portions of Clip 8 related to Mr. Domingo's military service. Instead, the defense requests that the Court permit admission of the following short statement from Clip 8:

> "I mean I didn't really have a cause to be angry just puberty and then with my family. The way Filipino-Americans tend to bring up their fucked up children. Maybe not physically abused fucked up children, but the head games."

As the government notes in its supplemental brief, the government's excerpt from Clip 8 contains Mr. Domingo's statement that he had been angry and hated people for many

years. The defense's proffered statement is crucial to show the jury that the motivation for his anger and hatred (and, therefore, the motive to commit the instant offense) was driven in part by his upbringing in a strict Filipino-American household rather than, as the government will argue, an allegiance to Islamic fundamentalism.

Just as the government's proffered excerpts regarding Mr. Domingo's desire to defend Islam purportedly go to motive and intent, so too do Mr. Domingo's statements about the issues underlying his anger and hatred toward society. Because these statements provide the rationale for his decision to commit the instant offense (i.e., his motive), they "tend[] to subject" Mr. Domingo to possible criminal liability. *See United States v. Slaughter*, 891 F.2d 691, 696-97 (9th Cir. 1989); *see also United States v. Paguio*, 114 F.3d 928, 931 (9th Cir. 1997); *United States v. Torres-Alvarez*, 44 F. App'x 818, 821-22 (9th Cir. 2002) (unpublished); *Su Chia v. Cambra*, 360 F.3d 997, 1005 (9th Cir. 2004).

Furthermore, the statements' trustworthiness is supported by corroborating circumstances. First, the inculpatory statements about Mr. Domingo's motive were made to FBI agents during a custodial interrogation after *Miranda* warnings. Second, this is not a case where a defendant simply came up with an alternate explanation while under custodial interrogation. Rather, Mr. Domingo's statements to the FBI agents echoed his pre-arrest statements to the CHS. Throughout his interactions with the CHS, Mr. Domingo lamented the course of his life, his family-troubles, his problems with women, and the fact that he felt like the world had dealt him a raw deal. *See e.g.,* Dkt. 112 at 2 (noting at least four conversations with the CHS where Mr. Domingo cites his social and familial rejection as a reason for committing the instant offense). He made these statements without any incentive to fabricate and with the understanding that he could trust the CHS as his Muslim brother. Third, it would be disingenuous for the government to claim that Mr. Domingo was being truthful with the CHS and UCE when he spoke of Islam, but not when he spoke about anything else. And fourth, the statement proposed by Mr. Domingo was made *at the same time as the statements*

...

*proffered by the government.* Because these are inculpatory statements, the government cannot reasonably argue that Mr. Domingo's admissions regarding his Islamic motivations are trustworthy but that statements indicating another (equally inculpatory) motivation are somehow unreliable.

The proffered statement both inculpates Mr. Domingo and is supported by corroborating circumstances which clearly indicate its trustworthiness. The statement is admissible both under Rules 804 and 807.

## IV.  CONCLUSION

Based on the foregoing, the Court should grant Mr. Domingo's motion to admit his post-arrest statement.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 9, 2021          By  /s/ DAVID I. WASSERMAN
                                  DAVID I. WASSERMAN
                                  LISA SHINAR LABARRE
                                  Deputy Federal Public Defenders
                                  Attorney for MARK DOMINGO