TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-0552/4491
      Facsimile:  (213) 894-2927
      E-mail:     reema.el-amamy@usdoj.gov
                  david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00313-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S POST-ARREST STATEMENTS |
| v. | |
| MARK STEVEN DOMINGO, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Reema M. El-Amamy

and David T. Ryan, hereby files its Response Supplemental Brief

Regarding Defendant's Post-Arrest Statements ("Response Supplemental

Brief").

//

//

This Response Supplemental Brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 16, 2021                 Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      CHRISTOPHER D. GRIGG
                                      Assistant United States Attorney
                                      Chief, National Security Division


                                      _____/s/_____
                                      REEMA M. EL-AMAMY
                                      DAVID T. RYAN
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

### <u>RESPONSE SUPPLEMENTAL BRIEF</u>

At issue are nine clips from defendant's recorded post-arrest statement that the government previously proposed to play at trial. The parties now agree on the admissibility of the majority of the clips.

- Defendant has not requested that any content be added to **Clip 2**, **Clip 4**, or **Clip 5**.  Additionally, the Court has denied defendant's motion to exclude **Clip 4**.  (Dkt. 193 at 4).  Defendant has withdrawn his objection to **Clip 3**. (Dkt. 197 at 3).  Therefore, the government intends to play **Clip 2**, **Clip 3**, **Clip 4**, and **Clip 5** as proposed at trial.

- As previously stated, the government no longer intends to play **Clip 6** or **Clip 7** at trial.  However, if it ultimately chooses to play either of those clips, it will include the additional content requested by defendant.

- The Court has ruled that **Clip 9** shall be excluded.  (Dkt. 193 at 4).  The government will not play this clip at trial.

Therefore, only **Clip 1** and **Clip 8** remain at issue.

**A.   Clip 1 is Relevant and Should Be Admitted**

In the government's newly shortened **Clip 1**, which takes place at the outset of the interview, an FBI agent asked defendant, "I just need to know, is there anyone besides your group that's looking to attack the rally in Long Beach."  Defendant replied, "I mean besides those neo-Nazi white nationalists that will show up armed, like the New Zealand Mosque shooter.  I mean I'm sure they're going to make it California legal.  But I'm sure anti-gun Antifa won't come armed, so, besides them, I don't know."

First, this clip is relevant as defendant tacitly acknowledged that he intended to attack the rally.  It is also relevant because he identified the individuals he believed would be present at the rally who he intended to kill – armed "neo-Nazi white nationalists" and "anti-gun Antifa."

Defendant's statements in **Clip 1** are consistent with his statements prior to his arrest regarding his intent to target these opposing groups in order to stoke civil unrest.  On April 19, 2019, defendant met with the Confidential Human Source ("CHS") and stated that he was serious about going forward with the "IED route" and identified a "white nationalist" group he wanted to attack.  (Dkt. 61 at 15-16).  On April 23, 2019, defendant again met with the CHS and proposed attacking a different "White Nationalist" rally in Huntington Beach, California, on Saturday, April 27, 2019.  Id. at 16.  Finally, on April 26, 2019, defendant met with an undercover law enforcement officer and the CHS, inspected what he believed were completed IEDs, practiced operating the remote detonators, and drove to the location for the upcoming rally to identify how they would enter the rally, where they would detonate the IEDs in order to kill the most people, and how they would escape.  Id. at 17.  On that date, defendant explained the purpose of the attack, saying:

> it's designed to cause fear and terror through the capital yeah.  But this is also because, I mean you feel it, the tension in the air, left and right . . . there's a civil war brewing bro.  A divided America. . . . It's not just for the movement but just for the world in general, bro.

Id. at 17-18.  Defendant continued:

> All around the world America goes on sticking its fucking cock in everyone's fucking business.  Now, divided America! . . . I'm banking on a lot of the US fleets, the Navy, that are constantly patrolling to have a strike for us anywhere in the world, they will be forced to duck back here, and,

2

1    you know, martial law, to bring back order.  Because it's
     common sense right?  Why patrol the world when your own
2    house is on fire?

3    Defendant explained that provoking civil war in the United States and

4    causing the US military to impose martial law would:

5         give[] our brothers around the world, the Mujahideen, a
          little stress off their back. . . . If we can cause enough
6         civil tension here and bring back the US troops, they all
          come back here and give our brothers a little more time to
7         fight.

8    Id.

9         Defendant's statement in **Clip 1** in which he acknowledges that he

10   intended to attack the rally, and identified the fact that white

11   nationalists and Antifa would both be present with one group likely

12   armed, is consistent with his motivation to cause a further "divided

13   America" and increase "civil tension" between the "left and right."

14   The Court should reject defendant's argument that **Clip 1** is

15   irrelevant and lacks probative value and permit the government to

16   play the clip at trial.

17        **B.   Defendant's Requested Addition to Clip 8 Should be Rejected**

18        Defendant's assertion that his requested addition is necessary

19   to demonstrate that he was motivated to commit the attack not only by

20   his violent extremist ideology, but also in part by personal

21   grievances, is incorrect.  (Dkt. 197 at 2).  The government's

22   proposed portions of defendant's post-arrest interview already

23   include several references to defendant's non-religious motivations

24   for planning the attack.  **Clip 2** includes defendant's statement that

25   he wanted to "vent my anger of just my life crashing around me."

26   **Clip 5** includes defendant's statement that his attack was intended as

27   "a big fuck you to this world that's been taking a big giant shit on

28   me for the last few fucking months to the point where I just can't

                                    3

fucking take it anymore."  **Clip 8** includes defendant's statement that he was angry before the New Zealand shooting, that he was "very misanthropic," that he hated people, and that his hatred came from his "heavy metal phase" from "[m]iddle school til about my conversion.  So for a long time, I'm just an angry piece of shit." Defendant's proposed addition is not necessary to understand **Clip 8** or to avoid any misleading impression, and is simply an effort to minimize his culpability and elicit sympathy by asserting that his longstanding anger was caused, in part, by the parenting style in the Filipino-American community.

     For the foregoing reasons, the government continues to respectfully request that this Court deny defendant's motion to admit additional portions of his post-arrest statements either directly or through the cross-examination of any witness.