TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0552/4491
        Facsimile: (213) 894-2979
        E-mail: reema.el-amamy@usdoj.gov
                david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                v.<br><br>MARK STEVEN DOMINGO,<br><br>            Defendant. | No. CR 19-313-SVW<br><br>GOVERNMENT'S MOTION TO ADMIT PORTIONS OF RECORDED JAIL TELEPHONE CALLS |

        Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Motion to Admit Portions of Recorded Jail Telephone Calls.

//

//

//

//

1          This Motion is based upon the attached memorandum of points and

2    authorities, the attached exhibits, the files and records in this

3    case, and such further evidence and argument as the Court may permit.

4    Dated: May 27, 2021              Respectfully submitted,

5                                     TRACY L. WILKISON
                                      Acting United States Attorney
6
                                      CHRISTOPHER D. GRIGG
7                                     Assistant United States Attorney
                                      Chief, National Security Division
8

9                                     _____/s/_____
                                      REEMA M. EL-AMAMY
10                                    DAVID T. RYAN
                                      Assistant United States Attorneys
11
                                      Attorneys for Plaintiff
12                                    UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   STATEMENT OF FACTS............................................2

III.  ARGUMENT......................................................2

      A.    Defendant's Statements Are Relevant and Admissible
            Under Rules 401 and 402...............................2

      B.    The Probative Value of Defendant's Statements Is Not
            Substantially Outweighed by the Considerations in Rule
            403..................................................13

IV.   CONCLUSION...................................................15

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**CASES**

<u>Huddleston v. United States</u>,
        485 U.S. 681 (1988)........................................14

<u>Old Chief v. United States</u>,
        519 U.S. 172 (1997)........................................14

<u>United States v. Curtin</u>,
        489 F.3d 935 (9th Cir. 2007)............................3, 14

<u>United States v. Diaz</u>,
        878 F.2d 608 (2d Cir. 1989).................................3

<u>United States v. LeMay</u>,
        260 F.3d 1018 (9th Cir. 2001)..............................13

<u>United States v. Mohamud</u>,
        843 F.3d 420 (9th Cir. 2016)................................3

<u>United States v. Palmer</u>,
        37 F.3d 1080 (5th Cir. 1994)...............................13

<u>United States v. Poehlman</u>,
        217 F.3d 692 (9th Cir. 2000)................................3

**OTHER AUTHORITIES**

Fed. R. Evid. 401.................................................3

Fed. R. Evid. 403..............................................2, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In March and April 2019, after writing for more than a year about his support for the Islamic State of Iraq and al-Sham ("ISIS"), his hatred of the United States, and his desire to carry out mass-casualty attacks in the United States, defendant Mark Steven Domingo ("defendant") planned and took steps to manufacture and use a weapon of mass destruction to commit mass murder.  Defendant attempted to commit this terrorist attack with two people whom he believed were collaborators, but who were in fact a confidential human source ("CHS") and undercover officer ("UCE") working for the FBI.

Since his arrest in April 2019, defendant has resided at the Metropolitan Detention Center ("MDC").  While there, he has made hundreds of recorded jail calls, all of which have been produced to defendant in discovery.  In them, defendant discussed the FBI's investigation of him, his motives for engaging in the charged crimes, and the evidence which may be presented against him at trial in this matter, including evidence that the FBI seized from him upon arrest and the witnesses who may testify against him.  The government seeks to admit the portions of the recordings identified below as they reflect defendant's consciousness of guilt and lack of remorse, and demonstrate defendant's predisposition to engage in the charged crimes.

Additionally, in pleadings filed in this case, defendant has previously stated that he intends to argue at trial that "the CHS and UCE employed persuasion, fraudulent representations, promises of reward, and pleas of sympathy and friendship to induce [defendant's] conduct in this case." (Dkt. 96 at 20.)  Defendant will argue that

the CHS and UCE played on defendant's loneliness and desperation, and he will introduce statements he made to a psychologist, Dr. Garabedian, in connection with mental health treatment that he received in order to further demonstrate defendant's dependence on the CHS and UCE for validation.  However, some of the calls summarized below contradict defendant's false claim that he was lonely and desperate for friendship, reveal defendant's attitude towards mental health treatment and his willingness to lie about his mental health status in this matter if it will benefit him at trial, and include statements about his sessions with Dr. Garabedian.

Because these recorded statements directly rebut the entrapment defense, they are relevant and admissible under Rules 401 and 402 and their probative is not substantially outweighed by a substantial risk of unfair prejudice under Rule 403.  As such, the government should be permitted to play each of these clips in its case-in-chief at trial.  The government reserves the right to introduce additional portions of jail calls after it hears defendant's case and cross-examination of government witnesses.

II.  **STATEMENT OF FACTS**

The government set forth a detailed statement of facts in support of its Motion _in limine_ to Preclude an Entrapment Defense (Dkt. 61 at 2-13), and incorporates those facts by reference.

III. **ARGUMENT**

A.  **Defendant's Statements Are Relevant and Admissible Under Rules 401 and 402**

Under Federal Rule of Evidence 401, evidence is relevant if (1) it has "any tendency" to make a fact more or less probable than it would be without the evidence, and (2) the fact is "of consequence

in determining the action."  Fed. R. Evid. 401; United States v. Diaz, 878 F.2d 608, 614 (2d Cir. 1989) (noting "two distinct requirements" in rule).  Evidence "need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same.  All that is required is a 'tendency' to establish the fact at issue." United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007).

Defendant's statements here are relevant because they tend to show defendant's intent, consciousness of guilt, and predisposition to commit the charged crimes.  "[A]lthough 'only those statements that indicate a state of mind untainted by the inducement are relevant to show predisposition,' statements made after the inducement which make 'clear that [defendant] would have committed the offense even without the inducement' are evidence of predisposition."  United States v. Mohamud, 843 F.3d 420, 434 (9th Cir. 2016) (quoting United States v. Poehlman, 217 F.3d 692, 704-705 (9th Cir. 2000)).

Several of the calls also directly contradict aspects of defendant's entrapment defense.  For these reasons, the calls summarized below are undoubtedly material, or "of consequence," in determining the action.  See Curtin, 489 F.3d at 943 ("fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action") (quoting Fed. R. Evid. 401 Advisory Committee Notes).

The government seeks to admit the following twenty-one clips:

- Clip 1 contains portions of a May 8, 2019 telephone call with J.D.  During this clip, defendant discussed the items that FBI agents had seized from his residence, including

3

his laptops and guns, and indicated ownership of the seized items that will be marked as exhibits at trial.

- Clip 2 contains portions of a June 4, 2019 telephone call with a male friend of defendant, R.M.  During the call, defendant described how his participation in the plot to commit the attack was a "blast," and the two discussed the intended targets of defendant's attack.  Defendant also discussed many individuals whom defendant had friendships with over the years leading up to his arrest. Additionally, during the call, R.M. told defendant:  "You should have fucking talked to me, dumbass.  About what you – were thinking of doing.  You could have still been here. You would–could have been drinking beers."  Defendant responded:  "[T]hank you for being there for me." Defendant's exchange with R.M. reflects defendant's consciousness of guilt, and demonstrates defendant's lack of remorse when he describes his criminal activities as a "blast."  It also flatly contradicts defendant's argument, as part of his entrapment defense, that he was lonely and desperate for the friendship and approval of the UCE and CHS and had no one else to turn to.

- Clip 3 contains a portion of a June 8, 2019 telephone call with R.M.  During the call, defendant told R.M. that R.M. could visit him in person after he got "convicted of it" and was "actually doing [his] time."  This call too contradicts defendant's argument, as part of his entrapment defense, that he was lonely and desperate for the friendship and approval of the UCE and CHS and had no one

4

else to turn to. It also reflects defendant's consciousness of guilt.

- Clip 4 contains a portion of a <u>June 9, 2019</u> telephone call with K.C. During this call, defendant discussed the FBI's investigation of him in connection with this matter, and claimed ownership of the vehicle that the FBI seized.

- Clip 5 contains a portion of a <u>June 12, 2019</u> telephone call with J.D., defendant's brother. During this call, defendant claimed that the FBI would not find any evidence in his car, and would only find "this one chick Rachel's fucking thong in the backseat." J.D. asked why the FBI would find a thong in the vehicle, and defendant responded: "Because I fucked her the day they caught me, mother--or the day, er, they, uh, arrested me." Defendant's statements reflect his consciousness of guilt and also are probative of his state of mind at the time he committed the charged crime. Immediately before meeting with the CHS and UCE to examine the explosive devices and finalize plans for the attack, defendant traveled from Los Angeles to Victorville to engage in sexual activities with another individual. One or more government witnesses will testify that defendant's impromptu trip right before his arrest was not expected by the government, and dozens of law enforcement officers waited for hours while defendant traveled to Victorville and back on the night that the government anticipated taking defendant into custody in connection with this matter. There was no certainty on law enforcement officers' part that defendant would return to

Los Angeles that evening after such a long drive in order
to meet with the CHS and UCE in order to finalize the plans
for the attack, and defendant was late to the meeting with
the CHS and UCE that night.  The call demonstrates that the
timing of meetings with the CHS and UCE were ultimately
controlled by defendant's willingness and availability to
meet with them, in the same way defendant controlled if any
attack was going to go forward, and the date, time, and
location of that attack.  This call further contradicts
defendant's argument, as part of his entrapment defense,
that he was lonely and desperate for the friendship and
approval of the UCE and CHS and had no one else to turn to.

- Clip 6 contains a portion of a June 24, 2019 telephone call
  with K.C., a woman that defendant shared a romantic
  relationship with.  During this call, defendant claimed
  ownership and use of a Facebook account that will be
  introduced as evidence at trial.  Defendant also discussed
  the many friends that he had prior to the date of his
  arrest, which will contradict his argument that he was
  lonely and desperate for the friendship of the UCE and CHS.

- Clip 7 contains a portion of a July 25, 2019 telephone call
  with H.G., a female friend of defendant.  During this call,
  defendant discussed his "general hatred of mankind" and his
  misanthropic viewpoints.  These statements are relevant to
  proving defendant's intent and predisposition to engage in
  the charged crimes, and are consistent with statements
  defendant made to the FBI after his arrest regarding his
  motive for participating in the planned attack.  This

portion of the post-arrest statement has been found to be admissible by the Court.  (Dkt. 200.)

- Clip 8 contains a portion of a December 31, 2019 telephone call with C.T.  During the call, defendant laughed as he told C.T. that he would be on television during his trial and stated that he was sure C.T. would see him.  His statements, demonstrating excitement about his case, are evidence of his intent and predisposition to commit the charged crimes, and contradict the defense that defendant only committed the crimes due to pressure from the UCE and OCE.

- Clip 9 contains a portion of a January 9, 2020 telephone call with K.C.  During the call, defendant discussed his willingness to lie about his mental health if it will assist him at trial.  Defendant has placed his mental health at issue and stated that he intends to present evidence regarding statements that he made to a psychologist in connection with mental health treatment in order to support his entrapment defense.  As such, defendant's recorded statements regarding his willingness to lie to mental health providers to help him at trial are relevant to rebut his defense.[1]

---

[1] During the call, K.C. referenced a letter that she sent to defendant that defendant could use to prove that he wasn't lying about needing treatment for a mental health condition.  The letter K.C. referred to was seized by the FBI from defendant's residence on the date of his arrest.  In the letter, K.C. stated that she was breaking up with defendant and voiced her opinion that "he might end up doing something really bad" due to his rage.  She also asked defendant to continue with his therapy, and begged defendant not to kill himself or anyone else.

- Clip 10 contains a portion of a <u>January 11, 2020</u> telephone call with K.C.  During this portion of the call, defendant discussed possible witnesses at trial and their potential testimony against him.  Defendant expressed great appreciation when K.C. agreed to testify and cry in front of the jury in order to appeal to the jury's sympathy.  He promised to reward her with "a million babies" if "it worked."  This call reflects defendant's consciousness of guilt and his fear of the witnesses who could possibly testify against him based on his review of their statements to law enforcement contained in the discovery in this matter.  He expressed relief and gratitude when K.C. was willing to counter damaging testimony by crying.  This call is also relevant to impeach the credibility of K.C. in the event she testifies at trial.

- Clip 11 contains a portion of a <u>January 27, 2020</u> telephone call with K.C.  During the call, defendant bragged about media attention that his case had received and his plan to tell a federal judge to "fuck off" in order to potentially have the charges dismissed.  These statements, demonstrating defendant's excitement about his case and disdain for instruments of the United States government, including this Court, are evidence of his intent and predisposition to commit the charged crimes, and contradict the defense that defendant only committed the crimes due to pressure from the UCE and OCE.

- Clip 12 contains a portion of a <u>December 28, 2020</u> telephone call with K.C.  During the call, defendant stated that he

8

went to therapy for K.C.  As noted above, defendant has stated that he intends to present evidence regarding statements that he made to a psychologist in connection with mental health treatment in order to support his entrapment defense.  Defendant's recorded statements regarding his motivation to seek therapy is relevant to rebut his defense.

- Clip 13 contains a portion of a <u>January 8, 2021</u> telephone call with K.C.  During the call, defendant stated that when he was released from jail, he would "hunt" down K.C.'s ex-boyfriends and kill them.  These statements tend to prove defendant's predisposition to engage in violent crimes, such as the crimes charged in this case.

- Clip 14 contains a portion of a <u>February 6, 2021</u> telephone call with K.C.  During that portion of the call, defendant discussed the mental health treatment that he received from Dr. Garabedian, and defendant displayed his condescending and dismissive opinion of the treatment he received and his time in those sessions.  As noted above, defendant has stated that he intends to present evidence regarding statements that he made to Dr. Garabedian in order to support his entrapment defense, and his statements during this call are relevant to rebut this defense.  During the call, defendant also discussed his hatred of the United States government.  These statements are relevant to proving defendant's intent and predisposition to engage in the charged crimes, and are consistent with statements defendant made to the FBI after his arrest regarding his

1    motive for participating in the planned attack.  This

2    portion of the post-arrest statement has been found to be

3    admissible by the Court.  (Dkt. 200.)

4    • Clip 15 contains a portion of a <u>February 6, 2021</u> telephone

5    call with K.C.  During the call, defendant discussed the

6    media attention his case had received, and the additional

7    media attention he would receive if he swore at a federal

8    judge.  These statements, demonstrating defendant's

9    excitement about his case and disdain for instruments of

10   the United States government, including this Court, are

11   evidence of his intent and predisposition to commit the

12   charged crimes, and contradict the defense that defendant

13   only committed the crimes due to pressure from the UCE and

14   OCE.

15   • Clip 16 contains a portion of a <u>February 19, 2021</u> telephone

16   call with K.C.  During the call, defendant violently

17   threatened "the person listening on the other end of this

18   line" and joked that he would be charged in a superseding

19   indictment with making "terrorist threats on a federal

20   phone."  These statements are evidence of his intent and

21   predisposition to commit the charged crimes, and contradict

22   the defense that defendant only committed the crimes due to

23   pressure from the UCE and OCE.

24   • Clip 17 contains a portion of a <u>February 23, 2021</u> telephone

25   call with K.C.  During the call, defendant complained that

26   K.C. talked to the FBI about defendant's "issues" and

27   stated that K.C. should have just told the FBI that

28   defendant was "pretty cool" and "pretty straight."  K.C.

10

reassured defendant that she didn't tell the FBI "anything
that they can't find out on their own."  During the call,
defendant also complained that "all these other bitches
ratted on me" to the FBI.  He was frustrated by the
negative statements individuals had made to the FBI about
his interactions with them prior to his arrest that he had
recently reviewed in discovery.  Defendant's statements are
relevant both to demonstrate his consciousness of guilt and
his fear regarding testimony against him at trial.
Additionally, this call may be used to impeach the
credibility of K.C. in the event she testifies at trial.

- Clip 18 contains a portion of a <u>March 6, 2021</u> telephone
call with K.C.  During the call, defendant expressed fear
that he was going to be "crucified" by the testimony of all
of the witnesses who would testify against him.  After
hearing defendant's fear, K.C. offered to testify on
defendant's behalf, and defendant told K.C. she would be
cross-examined about making defendant obtain mental health
treatment from Dr. Garabedian.  Defendant and K.C. then
laughed about "cussing out" the prosecution if K.C.
testified, and how that would give defendant "a pretty cool
story."  Defendant then again expressed concern that the
government would subpoena H.G. as a witness to testify
against him at trial.  These recorded statements are
relevant to demonstrate defendant's consciousness of guilt.
Additionally, as noted above, defendant has stated that he
intends to present evidence regarding statements that he
made to Dr. Garabedian in connection with mental health

11

treatment in order to support his entrapment defense.  As
such, his statements regarding the reasons for seeking
treatment are relevant to rebut his entrapment defense.
Finally, the statements made during this call can be used
to impeach the credibility of K.C. in the event she
testifies at trial.

- Clip 19 contains a portion of a <u>March 18, 2021</u> telephone
  call with K.C.  During the call, defendant discussed
  raising "terrorist babies" who would learn to speak Arabic.
  He then violently threatened anyone monitoring his
  telephone call.  These statements, demonstrating
  defendant's disdain for instruments of the United States
  government, are evidence of his intent and predisposition
  to commit the charged crimes, and contradict the defense
  that defendant only committed the crimes due to pressure
  from the UCE and OCE.

- Clip 20 contains a portion of a <u>March 22, 2021</u> telephone
  call with K.C.  During the call, K.C. informed defendant
  that she had received a government subpoena, and defendant
  expressed concern that the government was going to call all
  of his "exes," everyone he had "fucked with," and his co-
  workers to testify against him.  Defendant also again
  expressed concern that the government was going to subpoena
  H.G. to testify against him about his conduct prior to his
  arrest.  Defendant told K.C. that she "shoulda never
  consented to the FBI interview," and told her that now she
  gets "to air it all out" in Court.  Defendant warned K.C.
  not to lie about the negative things that she had to say

about him because she would get in trouble.  The two then talked about the number of people that would be watching his trial, and defendant described the media attention he had received at his last hearing.  These recorded statements are relevant both to demonstrate defendant's consciousness of guilt and to impeach the credibility of K.C. in the event she testifies at trial.

- Clip 21 contains a portion of a <u>March 23, 2021</u> telephone call with K.C.  During the call, K.C. expressed her fear about getting a subpoena and having to testify at defendant's trial.  During the call, defendant told K.C. that he bet it was not just K.C. who received a subpoena, and it was him that should be the one who should be "shittin' bricks."  These recorded statements are relevant both to demonstrate defendant's consciousness of guilt and to impeach the credibility of K.C. in the event she testifies at trial.

**B.    The Probative Value of Defendant's Statements Is Not Substantially Outweighed by the Considerations in Rule 403**

The recorded statements set forth above directly bear on the government's proof that defendant committed the charged crimes and defendant's consciousness of guilt, as well as disputed issues at trial, including defendant's intent and predisposition to commit the charged crimes and the credibility of anticipated defense witnesses. "The probative value of evidence is determined by considering the strength and need for that relevant evidence." <u>United States v. LeMay</u>, 260 F.3d 1018, 1033 (9th Cir. 2001); <u>see also</u> <u>United States v. Palmer</u>, 37 F.3d 1080, 1084 (5th Cir. 1994) (important consideration

13

assessing probative value of evidence is "prosecutorial need" for the evidence; another is "how strongly the proffered evidence tends to prove an issue of consequence"); Curtin, 489 F.3d at 946 ("usual rules for admissibility" include a determination "'whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors . . .'") (quoting Advisory Committee Notes to Rule 404); 22 C. Wright & K. Graham, Federal Practice and Procedure § 5250, pp. 546-47 (1978) ("The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point.") (cited approvingly in Old Chief v. United States, 519 U.S. 172, 185 (1997)).

Rule 403 is a rule of inclusion generally favoring admissibility. Relevant evidence should be excluded under Rule 403 only if the probative value of the proffered evidence is outweighed by the dangers outlined in Rule 403. Huddleston v. United States, 485 U.S. 681, 688 (1988) ("[I]t is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e. prejudice, confusion or waste of time[.]") (citing and quoting S. Rep. No. 93-1277, p. 25 (1974)).

The balancing test in Rule 403 favors admission of defendant's statements. As set forth above, the recorded statements directly bear on the primary disputed issues at trial and the credibility of anticipated defense witnesses, and is not substantially outweighed by the considerations in Rule 403. Moreover, the government made every effort to select clips that do not reveal defendant's custodial status or indicate any possible sentence defendant may receive.

14

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court permit defendant to play portions of the recorded jail telephone calls identified above.