CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
LISA SHINAR LABARRE (Bar No. 246429)
(E-Mail: Lisa_Labarre@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK DOMINGO,<br><br>Defendant. | Case No. CR 19-313-SVW<br><br>**OPPOSITION TO MOTION TO ADMIT PORTIONS OF RECORDED JAIL CALLS**<br><br>Hearing Date: June 28. 2021<br>Hearing Time: 11:00 a.m. |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Lisa Shinar LaBarre, hereby files his opposition to the government's motion to admit portions of recorded jail calls [dkt. no. 205].

                                        Respectfully submitted,

                                        CUAUHTEMOC ORTEGA
                                        Federal Public Defender

DATED: June 7, 2021        By  */s/ Lisa Shinar LaBarre*
                                        DAVID I. WASSERMAN
                                        LISA SHINAR LABARRE
                                        Deputy Federal Public Defenders

## I. INTRODUCTION

The government has estimated that its case will last approximately two weeks. [Dkt. 202 at 2.] Despite the government's anticipated presentation of numerous text messages, audio recordings, and video recordings between the confidential human source ("CHS"), the undercover officer ("UCE"), and Mr. Domingo--evidence directly relevant to the offense charged--the government wishes to supplement its case-in-chief by presenting twenty-one irrelevant and unfairly prejudicial jail telephone conversations between Mr. Domingo and his family members, friends, and his girlfriend. All of these jail calls have taken place *after* (and sometimes years after) the charged offense, and offer no insight or relevance to the charged offense other than to sully Mr. Domingo's character in general, and to allow the jury to convict him on matters unrelated to the charges in the Indictment.

The government has ample opportunity to present its case-in-chief with relevant evidence, including Mr. Domingo's own recorded words in alleged preparation of the charged acts. It should not be permitted to seek a conviction based on evidence not relevant to the act of attempting to use a weapon of mass destruction, such as his intimate conversations with friends and family made well after his arrest. The government's motion to admit these jail calls should be denied in full.

## II. LAW

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; *and* (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Thus, when an opponent challenges the relevance of certain evidence, the party proffering the evidence must establish its relevance in an action. The proponent then must show that evidence has some tendency to prove or disprove a fact that is consequential in a case. Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

Rule 403 of the Federal Rules of Evidence excludes even relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

2

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *United States v. Curtin*, 489 F.3d 935, 963 (9th Cir. 2007). Unfair prejudice is a tendency to decide on emotional or other improper basis. Fed. R. Evid. 403, advisory committee notes; *see also United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003). Explaining "unfair prejudice," the Ninth Circuit stated in *Curtin*:

> The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited . . . and this risk is disproportionate to the probative value of the offered evidence. Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury. Accordingly, trial courts should exclude marginally relevant but extremely prejudicial evidence.

*Curtin*, 489 F.3d at 963-64; *see also United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004) ("Where the probative value is slight, moderate prejudice is unacceptable"). The district court is given wide discretion pursuant to Fed. R. Evid. 403 to exclude relevant evidence if there is a danger of unfair prejudice. *United States v. Dupuy*, 760 F.2d 1492, 1499 (9th Cir. 1985).

Furthermore, this Court has broad discretion under Rule 403 to exclude admissible evidence to avoid delay, waste of time, and needlessly presenting cumulative evidence. *See United States v. Hooton*, 662 F.2d 628, 636 (9th Cir. 1981) (trial court properly exercised his authority to prevent needless presentation of marginally relevant cumulative evidence); *see also Wilson v. Maricopa County*, No.

CV-04- 2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence under Rule 403 regardless of its admissibility where "[t]he case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases, resulting in an unnecessarily lengthy trial for the parties, the Court, and the jury").

Additionally, pursuant to Federal Rule of Evidence 801(c), hearsay is defined as an out of court statement that is offered for its truth. *Id.* The government intends to introduce recorded jail conversations for the truth asserted in the statements. Particularly with respect to the statements by the other individuals on the calls, their statements are hearsay and inadmissible.

Finally, the introduction of statements by other individuals violates the confrontation clause. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Am. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that a witness's testimonial statement cannot be used against a defendant unless the accused has a right to cross examine the witness. Here, the statements of other individuals may not be admitted because to do so would be a confrontation clause violation.

### III. ARGUMENT

Mr. Domingo objects to each of the government's proposed clips as follows:

- Clip 1: This clip is cumulative. The government wishes to introduce through this call evidence of items seized by FBI agents from Mr. Domingo's person and residence. Such evidence is unnecessary, as FBI agents will testify to the seizure of evidence from Mr. Domingo and his living area.
- Clip 2: This clip is irrelevant, unfairly prejudicial, and wastes judicial time. First, the context of the "blast" comment is unclear. There is little explanation prior to the "blast" comment, and immediately after the comment

4

Mr. Domingo references R.M.'s possible move to New York. Further, the call devolves into a general discussion as to what various individuals thought of Mr. Domingo after his arrest and its publication in the news media. Such discussion is wholly irrelevant to the charges and involves multiple levels of hearsay: at one point, R.M. is talking about what another individual, "Luke," has said about Mr. Domingo's involvement in attacking a "Nazi rally." The government wishes to play approximately *five minutes* of this banter of other individuals' thoughts on Mr. Domingo's arrest, none of whom are testifying at trial (and indeed, if they were to testify, their testimony would be entirely irrelevant.) Finally, contrary to the government's assertion that this comment contradicts Mr. Domingo's need for friendship by showing that he had a close friend, R.M.'s statements to Mr. Domingo such as "you should have fucking talked to me, dumbass" indicate an absence and disconnect in their relationship: that he was not a person Mr. Domingo could trust. R.M. will not likely testify and again, his statements to Mr. Domingo are hearsay and a confrontation clause violation. Finally, Mr. Domingo's statements, "I went to the school but no one fucking talked to me," and R.M.'s response: "All you fuckers, like, went to school with him, you guys didn't really try hanging out with him, or talking to him" argues against the government's contention that this clip demonstrates that Mr. Domingo had "many individuals whom [he] had friendships with over the years leading up to his arrest." Gov. mot. at 4. Clip 2 should be struck in its entirety as irrelevant, unfairly prejudicial, and as hearsay.

- Clip 3: This call should be excluded as irrelevant, for the same reasons set forth for Clip 2. Furthermore, it is apparent R.M. and Mr. Domingo are referencing his status in jail. References to a defendant's custodial status "may create a subtle prejudice undermining the presumption of innocence," *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976), and any possible relevancy

of this clip is far outweighed by the danger of unfair prejudice to Mr. Domingo.

- Clip 4: This call should be excluded as cumulative, for the reasons set forth for Clip 1.  The sole reason the government proffers for the inclusion of this clip is to provide more information regarding the government's investigation and Mr. Domingo's ownership of the vehicle, topics that can be addressed through agent testimony.  Additionally, Mr. Domingo's statements regarding the United States government planting cocaine are entirely irrelevant to the charges here: there is no evidence of drug possession or trafficking by Mr. Domingo, nor is he charged with such crimes.  Inclusion of these statements would confuse the issues and mislead the jury.  Finally, the government wishes to introduce Mr. Domingo's statement "fuck the feds" solely for its highly prejudicial effect against Mr. Domingo, and this clip has little probative value as to the charges against him.

- Clip 5: Statements regarding Mr. Domingo's casual sexual relationship is irrelevant to the charged offenses and unduly prejudicial.  Mr. Domingo is not on trial for his sexual mores or for a sex crime.  Governments witnesses may certainly testify to their investigation of Mr. Domingo and his unexpected absence before the planned attack, but Mr. Domingo's statements regarding "Rachel's fucking thong in the backseat" and the like only serve to prejudice the jury against Mr. Domingo for reasons unrelated to the charged offense.

- Clip 6: This clip is unnecessary and cumulative as Mr. Domingo is not contesting ownership of the Facebook account.  Furthermore, this recording took place after the charged planned attack, and does not offer clarity as to Mr. Domingo's relationships and state of mind during the charged offense.

- Clip 7: This clip must be excluded as unfairly prejudicial under Rule 403.  Mr. Domingo's statements "fuck everybody", "I hope everyone gets cancer", and his "general hatred of mankind" were not made in connection with the

charged offense and are offered to simply poison the jury against Mr. Domingo.  The government will be able to offer Mr. Domingo's statements made prior to and in connection with the offense to bolster their argument against entrapment; these unrelated statements made after the offense only serve to unfairly prejudice the jury against Mr. Domingo.

- Clip 8: These brief statements were made on December 31, 2019--months after the April 2019 offense--and context is not offered regarding Mr. Domingo's statement regarding possible TV coverage.  Nevertheless, discussion of possible media coverage is irrelevant to the charged offense.
- Clip 9: Mr. Domingo's statements regarding a mental evaluation are taken entirely out of context and do not support the government's argument that they demonstrate Mr. Domingo's willingness to lie to mental health providers to support his trial defense.  First, it is clear that Mr. Domingo is not speaking about his case, but rather about other inmates who are undergoing mental health evaluations at MDC.  Mr. Domingo is discussing what other inmates do as part of their cases: "if they're facing trial in another state, they come here for a few months and they get, like, they talk to some, like some psychologist…".  Mr. Domingo is not claiming that he lacks competence to stand trial, nor is he asserting a mental health defense; this discussion is irrelevant and will confuse the issues and mislead the jury.  No statements in this clip evidence any intent by Mr. Domingo to lie to a mental health provider, and indeed Mr. Domingo's statement "Oh he's probably going to act crazy on purpose.  What they don't know is I'm a… what they don't know is I'm a natural at it" shows that Mr. Domingo disclaims any theories that his behavior is an act for his defense.  Furthermore, it is clear from this clip that Mr. Domingo is in custody and all references regarding his custodial status must be excluded from trial.

- Clip 10: Mr. Domingo's playful banter with his girlfriend is absolutely irrelevant to the charges here.  Mr. Domingo's statement regarding "a million babies" is clearly a joke, and K.C. laughs in response: "all the annoying little bastards."  The government must prove their case against Mr. Domingo with actual relevant evidence regarding the alleged bombing attack, and not with "pillow talk" between Mr. Domingo and his girlfriend.  Finally, Mr. Domingo references being in custody in these statements: "when I first got locked up."
- Clip 11: This clip must be excluded under Rule 403.  There is no relevance to these statements to the charges against Mr. Domingo, and are offered solely to unfairly inflame and prejudice the jury against him.
- Clip 12: This brief clip offers nothing to demonstrate Mr. Domingo's true motivations for seeking mental health therapy.  Mr. Domingo is jokingly bantering with his girlfriend, and the clip abruptly ends after twenty seconds.  This clip must be excluded as irrelevant and a waste of judicial time.
- Clip 13:  This clip must be excluded under Rules 401 and 403.  Mr. Domingo is not charged with assault, and the statements "I will eat my cereal out of the bottom of [K.C.'s ex-boyfriends'] fucking skull cavities" serves to inflame the jury against Mr. Domingo for reasons unrelated to his case.  Furthermore, these statements were made almost two years after the charged offenses, and bear no relevance to predisposition to commit those offenses.
- Clip 14: Mr. Domingo's use of the word "nigga" should be excluded under Rule 403.  Mr. Domingo is not on trial for a hate crime, and such derogatory language would only inflame the jury against him for reasons unrelated to the offense.  This Court has already granted Mr. Domingo's motion to exclude images "containing derisive material about Jews, Christians, homosexuals, or black people [because] the minimal probative value of those images is substantially outweighed by a danger of unfair prejudice." Dkt. 193 at 5.  That reasoning should be extended to Mr. Domingo's use of derogatory

language in this clip. Moreover, the statements "the United States government's full of fucking dicks who don't want to pardon me" and "hope the White House burns down" should also be excluded for the same reason. "You should give him a million years" further references Mr. Domingo's potential sentence. Finally, Mr. Domingo's rant to his girlfriend three years[1] *after* his treatment is of little relevance to his intent to engage in treatment three years *prior*.

- Clip 15: For the reasons set forth as to Clip 11, this clip must also be excluded from trial. Mr. Domingo's derogatory statements regarding the United States government and the federal judicial system roughly two years after the charged offenses are of little relevance, and are unfairly prejudicial to Mr. Domingo. By seeking the admission of this clip, the government wants Mr. Domingo to be convicted based on a frustrated jailhouse rant two years after the fact, rather than evidence that he participated in the planned attacks.

- Clip 16: Mr. Domingo is not charged with making terrorist threats, and Mr. Domingo's remarks regarding his frustration at jailhouse searches and call recording *two years after the charged offenses* bear no relevance to the matter at hand. First, it is clear from these statements that Mr. Domingo is in custody, and all references to Mr. Domingo's custodial status must be excluded from trial. Prosecutors should not refer to a defendant's custodial status because it may undermine the presumption of innocence. *United States v. Washington*, 462 F.3d 1124, 1137 (9th Cir. 2006). Furthermore, the offensive language by Mr. Domingo was used in reference to his conditions of confinement, and not in relation to the alleged plan to attack the Long Beach rally. By arguing for the admission of this clip, the government seeks to convict Mr. Domingo because he uses inflammatory language with his

---

[1] Mr. Domingo met with Dr. Garabedian from February-June 2018.

9

girlfriend and appears to be an unpleasant person in custody, and not because he committed the acts charged in the Indictment. Such a result cannot be permitted here. Additionally, Mr. Domingo's use of the word "nigga" should be excluded under Rule 403.

- Clip 17: The government wants to present before the jury two full minutes of banter between Mr. Domingo and his girlfriend, including the statement (among others) "bitches ain't shit but hoes and tricks."[2] There is absolutely no relevance to these statements and this clip must be excluded under Rule 403. Any possible probative value of this clip regarding witness statements against Mr. Domingo to the FBI is vastly outweighed by the prejudicial impact of the offensive and misogynistic comments made by Mr. Domingo. The government can present their witnesses in their case-in-chief; there is no relevance to Mr. Domingo's opinion of government witnesses other than to portray him in a negative light unrelated to the 2019 charges against him.

- Clip 18: This clip must be excluded for the same reasons set forth as to Clip 17. References to "cussing out" the prosecution are unfairly prejudicial and of no relevance: it is expected that a defendant would not have a favorable opinion of the prosecution against him. Mr. Domingo's speculation as to how witnesses will testify is again of no relevance, and there are no threats made by Mr. Domingo against any witness.

- Clip 19: This clip must be excluded under 403. Mr. Domingo makes several racially charged statements to his girlfriend, including repeated use of the word "nigger." As argued above, this Court has already granted Mr. Domingo's motion to exclude images "containing derisive material about Jews, Christians, homosexuals, or black people [because] the minimal probative value of those images is substantially outweighed by a danger of

---

[2] This is actually a lyric contained in the song "Bitches Ain't Shit" by Dr. Dre.

10

unfair prejudice", dkt. 193 at 5, and that ruling should be extended to the language used by Mr. Domingo in this call. There is minimal probative value as these statements were made two years after the charged offense and relate only to the recording of his jail calls. Mr. Domingo is not charged with, in the government's words, "disdain for instruments of the United States government," Gov. Mot. at 12, and certainly a defendant's frustration at being prosecuted and incarcerated is not a fact that has any relevance to the case at trial.

- Clip 20: Contrary to the government's assertion that Mr. Domingo was somehow engaging in nefarious activities with regards to the witnesses against him, Mr. Domingo tells K.C. "not to lie" after being subpoenaed to testify in court. The ensuing almost five-minute discussion regarding the structure of trial and possible public and/or media attention is of no relevance to the charges here. Furthermore, Mr. Domingo again uses the word "nigger," which must be excluded for the reasons mentioned in the argument as to Clip 19.

- Clip 21: Mr. Domingo's statement that he should be "shitting bricks"[3] at trial, a term for being extremely scared or frightened, is again of no relevance here. That a criminal defendant is nervous about his upcoming trial does not make any fact in consequence more or less probable. And should K.C. testify,[4] she can be asked directly about her fear of testifying: her hearsay statement about her fear should be excluded.

---

[3] https://www.urbandictionary.com/define.php?term=shitting%20bricks&utm_source=search-action

[4] It is evident from this conversation that K.C. is under government subpoena to appear at trial.

11

## IV.  CONCLUSION

The government is trying to stretch out an already lengthy trial by playing multiple recordings of jailhouse conversations between Mr. Domingo and his family and friends.  None of these calls have any relevance to the charges at hand and only serve to paint Mr. Domingo as a generally unlikeable person in the eyes of the jury.  The government has ample opportunity to present its case against Mr. Domingo without resorting to such noise and distraction.  As such, the Court should deny the government's motion to admit portions of recorded jail telephone calls.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 7, 2021          By  /s/ Lisa Shinar LaBarre
                                 DAVID I. WASSERMAN
                                 LISA SHINAR LABARRE
                                 Deputy Federal Public Defenders