TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0552/4491
    Facsimile: (213) 894-2979
    E-mail: reema.el-amamy@usdoj.gov
         david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARK STEVEN DOMINGO,<br><br>    Defendant. | No. CR 19-313-SVW<br><br>GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO ADMIT PORTIONS OF RECORDED JAIL TELEPHONE CALLS |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Reply in Support of its Motion to Admit Portions of Recorded Jail Telephone Calls.

//

//

//

This Reply is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 14, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division


        /s/
REEMA M. EL-AMAMY
DAVID T. RYAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.    INTRODUCTION......................................................1

II.   ARGUMENT..........................................................2

      A.   Applicable Law...............................................2

      B.   Clip 1 and Clip 6: Defendant Acknowledged Ownership of
           Evidence Seized from His Residence and His Facebook
           Account......................................................3

      C.   Clips 2 and 5: Defendant Described His Active Social
           and Dating Life Prior to His Arrest, Contrary to His
           Claim that His Social Isolation Made Him Susceptible
           to Entrapment................................................4

      D.   Clips 9, 12, and 14: Defendant Described His
           Willingness to Lie During, and Disdain For, Mental
           Health Treatment.............................................6

      E.   Clips 10, 17, 18, and 20: The Court Should Admit Each
           of Defendant's Recorded Statements Regarding the
           Evidence He Believes Will Be Presented Against Him at
           Trial........................................................7

III.  CONCLUSION.......................................................10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

Other Authorities

Jones v. Ford Motor Co.,
   204 Fed. Appx. 280 (4th Cir. 2006)................................. 2

United States v. Hankey,
   203 F.3d 1160 (9th Cir. 2000).................................. 2, 3

United States v. Lindsay,
   931 F.3d 852 (9th Cir. 2019)....................................... 5

United States v. Mills,
   704 F.2d 1553 (11th Cir. 1983)..................................... 3

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981)...................................... 2

United States v. Starnes,
   583 F.3d 196 (3d Cir. 2009)........................................ 2

Rules

Fed. R. Evid. 403............................................... 2, 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

After engaging in substantial pre-trial litigation in order to introduce additional portions of recorded statements defendant made during the investigation and during his post-arrest interview, defendant now argues that the government should not be permitted to present portions of recorded jail telephone calls because it would substantially lengthen the current trial estimate of two weeks. However, defendant fails to acknowledge that, in total, the government's proposed clips constitute approximately **30 minutes** of recorded communications.[1]  Additionally, the parties are in the process of attempting to reach certain evidentiary stipulations, which will reduce both the estimated trial length and the need to call multiple witnesses.  As defendant has failed to demonstrate that the additional recorded communications will result in a waste of time or unduly lengthen the government's trial estimate, any objection to the proposed clips on the basis that they are "cumulative" should be denied.

Additionally, because the remaining eleven recorded statements reflect defendant's consciousness of guilt and lack of remorse, demonstrate defendant's predisposition to engage in the charged crimes, and directly rebut defendant's entrapment defense, they are relevant and admissible under Rules 401 and 402 and their probative

---

[1] Additionally, the government now withdraws its request to play **Clip 3**, **Clip 4**, **Clip 7**, **Clip 8**, **Clip 11**, **Clip 13**, **Clip 15**, **Clip 16**, **Clip 19**, and **Clip 21** in its case-in-chief.  The government reserves the right play these clips during the cross-examination of defendant or any other defense witness, as well as the right to introduce additional portions of recorded jail calls after it hears defendant's case and cross-examination of government witnesses.

value is not substantially outweighed by a risk of unfair prejudice under Rule 403.  As such, the government should be permitted to introduce each of these eleven clips in its case-in-chief at trial.

## II. ARGUMENT

### A. Applicable Law

Under Federal Rule of Evidence 401, evidence is relevant, and therefore admissible under Federal Rule of Evidence 402, if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  "Relevance is typically a low bar to the admissibility of evidence, even though other Federal Rules of Evidence may otherwise limit such admissibility."  Jones v. Ford Motor Co., 204 Fed. Appx. 280, 283 (4th Cir. 2006); accord United States v. Miranda-Uriarte, 649 F.2d 1345, 1354 (9th Cir. 1981) ("The standard of relevance is not strict.")

Relevant evidence may be excluded under Rule 403 only if its probative value is "substantially outweighed" by the danger of unfair prejudice.  See Fed. R. Evid. 403.  Unfair prejudice "does not simply mean damage to the opponent's cause.  If it did, most relevant evidence would be deemed [unfairly] prejudicial." United States v. Starnes, 583 F.3d 196, 215 (3d Cir. 2009).  "This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).  "FRE 403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial." Id.

"Relevant evidence is inherently prejudicial; but it is only

unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." Hankey, 203 F.3d at 1172 (quoting United States v. Mills, 704 F.2d 1553, 1559 (11th Cir. 1983)).  "Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing." Id. (citation omitted).  "Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Id. (citation omitted).  "As the Advisory Committee Notes to FRE 403 explain, unfair prejudice means 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Id.

**B. Clip 1 and Clip 6: Defendant Acknowledged Ownership of Evidence Seized from His Residence and His Facebook Account**

Defendant has objected to two of the short proposed recordings – **Clip 1**, and **Clip 6** – merely on the basis that they are "cumulative," but cannot articulate any unfair prejudice that would result from their admission.  As such, both should be admitted.

- **Clip 1** is an approximately two-minute recording in which defendant itemized and personally claimed ownership of each of the items FBI agents seized from him and his residence on the date of his arrest, including his wallet that contained a receipt for the nails defendant purchased in advance of his planned attack.  Moreover, this clip does not contain language that raises a substantial risk of unfair prejudice.

- **Clip 6** is an approximately 43-second recording in which defendant personally claimed ownership of a Facebook

3

1    account that will be introduced as evidence at trial.
2    Defendant also acknowledged during the recording that he
3    had numerous Facebook friends at the time of his arrest.
4    The Facebook account is highly probative not only because
5    defendant used it to make numerous statements relevant to
6    the charged crimes but also because it demonstrates his
7    active social life, which directly contradicts his argument
8    that he was lonely and susceptible to entrapment because he
9    was "desperate" for the friendship of the CHS and UCE.
10   This clip also does not contain language that raises a
11   substantial risk of unfair prejudice.

12  **C.  Clips 2 and 5: Defendant Described His Active Social and Dating Life Prior to His Arrest, Contrary to His Claim that**
13  **His Social Isolation Made Him Susceptible to Entrapment**

14   • **Clip 2** is an approximately seven-minute recording in which
15   defendant spoke with R.M., a longtime friend with whom
16   defendant regularly socialized until his arrest, regarding
17   their friendship and defendant's relationships and
18   experiences "partying" with other mutual friends.
19   Defendant also discussed with R.M. his participation in the
20   plot to commit the attack charged in this case.
21   Defendant's statements in this clip directly contradict his
22   argument that he was susceptible to entrapment in part due
23   to his social isolation.  As the Court has recognized,
24   defendant has argued that he "was depressed and desired
25   friendship, family, and belonging," and that "these
26   circumstances rendered him vulnerable to the CHS's alleged
27   inducement."  (Dkt. 178 at 2.)  Defendant's statements and
28   activities regarding his active social and dating life are

4

    relevant as they tend to contradict that defense. Defendant cannot claim that his own social and dating life leading up to the date of the charged crimes are irrelevant while arguing that he was susceptible to entrapment because of his social isolation and desperate need for friendship from the CHS and UCE.

- **Clip 5** is an approximately two-minute recording in which defendant claimed ownership of his vehicle and described in detail his activities immediately before he was taken into custody in this matter, including his active dating life. As with **Clip 2** and **Clip 6**, defendant's statements in this clip directly contradict his argument that he was susceptible to entrapment in part due to his social isolation and desperate need for friendship from the CHS and UCE.  Moreover, the reference to sexual activity in the clip is not derogatory or likely to inflame the jury.  As this Court has "wide latitude" when it balances any prejudicial effect of proffered evidence against its probative value, and given the probative value of the recording, the Court should admit it despite defendant's references to his sexual acts. United States v. Lindsay, 931 F.3d 852, 868 (9th Cir. 2019).  Furthermore, to the extent the Court is concerned about any prejudicial effect on defendant due to his own statements regarding his activities in the hours leading up to his arrest, that may be cured via a limiting instruction.  The government maintains that **Clip 5** should be admitted.

**D. Clips 9, 12, and 14: Defendant Described His Willingness to Lie During, and Disdain For, Mental Health Treatment**

Defendant plans to introduce statements that he made to a mental health provider, Dr. Garabedian, as evidence of his emotional state in support of his entrapment defense. Accordingly, the government should be permitted to introduce evidence that bears on whether defendant's statements to Dr. Garabedian were truthful. The Court has previously ruled that the government "is free to cross-examine Dr. Garabedian" regarding defendant's motivation for seeking mental health treatment as well as other issues surrounding his treatment. (Dkt. 178 at 3.) **Clips 9**, **12**, and **14** similarly bear on the question of the veracity of defendant's statements to Dr. Garabedian, and the government should be permitted to introduce those clips to rebut defendant's evidence regarding his mental health treatment.

- **Clip 9** is an approximately two-minute recording in which defendant expressed his willingness to lie to mental health providers to help him at trial. Defendant confirmed that he "probably would at some point" have to engage in a mental health evaluation in advance of trial, and made derisive statements regarding individuals who make accurate statements during such evaluations, rather than lie to help themselves. Moreover, nothing in the recording indicates that defendant (or any other individual) is in custody, or in any other manner raises a substantial risk of unfair prejudice.
- **Clip 12** is an approximately 20-second recording in which defendant stated his motivation to seek therapy from Dr. Garabedian. Indeed, his statements are consistent with

6

    those he made to Dr. Garabedian when he first sought treatment, and are relevant and admissible at trial.

- **Clip 14** is an approximately one-minute recording[2] in which defendant displayed his condescending and dismissive opinion of the treatment he received and his sessions with Dr. Garabedian.  Defendant's objection to any clip regarding his use of the word "nigga" should be rejected.  Defendant is not using the word "nigger" in any recording to engage in hate-motivated speech against any African-American.  It is widely known that the phrase "my nigga" can be used loosely in exchange for the phrase "my friend," and the phrase today is used by people of all races.[3]  Consistent with this description of the word "nigga," in this clip, defendant used the term "nigga" to address K.C., who is an individual who is not African-American and with whom defendant was in a romantic relationship.  Any risk of unfair prejudice could be addressed through testimony from a government witness in connection with **Clip 14** to briefly explain the difference between "nigga" and "nigger" in the context of defendant's recorded statements.

**E. Clips 10, 17, 18, and 20: The Court Should Admit Each of Defendant's Recorded Statements Regarding the Evidence He Believes Will Be Presented Against Him at Trial**

During several of these proposed clips, defendant discussed at length the evidence which may be presented against him at trial in this matter, as well as the witnesses who he speculates may testify

---

[2] The government will agree not to play the second half of the recording, 5:46 through 6:37, during its case-in-chief.

[3] <u>See, e.g.</u>, https://en.m.wikipedia.org/wiki/Nigga.

against him. These calls reflect defendant's consciousness of guilt and lack of remorse, and demonstrate defendant's predisposition to engage in the charged crimes. Moreover, any risk of unfair prejudice caused by defendant's use of objectionable language can be addressed through minor redactions.

- **Clip 10** is an approximately two-minute recording in which defendant discussed possible witnesses at trial who may testify against him, including H.G., and their potential testimony. As defendant's romantic partner, K.C. spoke about her desire to have children with defendant once this matter was over, and defendant expressed great appreciation when K.C. agreed to testify and cry in front of the jury in order to appeal to the jury's sympathy, saying he would reward her with "a million babies" it "it worked." Initially, these statements are relevant to impeach K.C.'s credibility should she testify at trial. Furthermore, they reflect defendant's consciousness of guilt and his fear of the witnesses who could testify against him based on his review of their statements to law enforcement contained in the discovery in this matter. Moreover, nothing in this call indicates that defendant remains in custody.[4]
- **Clip 17** is an approximately two-minute recording in which defendant expressed his frustration with negative statements individuals had made to the FBI about him, and K.C. responded that she didn't tell the FBI "anything that they can't find out on their own." As with **Clip 14**, these

---

[4] Additionally, if necessary, the government could redact defendant's reference to the phrase "locked up."

8

statements are relevant to impeach K.C.'s credibility should she testify at trial, and reflect defendant's consciousness of guilt and fear of the witnesses who could testify against him.  Moreover, the government can redact the references at the beginning of the conversation to "bitches," "hoes," and "tricks," which will address defendant's concern regarding "offensive and misogynistic comments" during the clip.

- **Clip 18** is an approximately four-minute recording in which defendant expressed fear that he was going to be "crucified" by the testimony of all of the witnesses who would testify against him, described their possible testimony, including that of H.G., and informed K.C. that, if she testified, she would be asked about making defendant obtain mental health treatment.  As with **Clip 14** and **Clip 17**, these statements are relevant both to demonstrate his consciousness of guilt and his fear regarding testimony against him at trial.  Furthermore, defendant's statements regarding his motivation for seeking mental health treatment are relevant to rebut the entrapment defense, as discussed above.  Moreover, this clip does not raise any issues regarding "offensive and misogynistic comments" or otherwise risk of unfair prejudice.

- **Clip 20** is an approximately four-minute recording in which defendant told K.C. she should not have spoken to the FBI and expressed concern about his ex-girlfriends and people he had "fucked with" coming to testify against him.  As with **Clip 14, Clip 17**, and **Clip 18,** this clip is relevant

both to demonstrate his consciousness of guilt and his fear regarding testimony against him at trial, as well as to rebut the entrapment defense.  Furthermore, as discussed above, during this clip, defendant uses the word "nigga," and not "nigger."  The draft transcripts will be corrected to reflect that fact and any potential unfair prejudice from the use of that term can be addressed, as discussed above.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court permit the government to play the portions of the eleven recorded jail telephone calls identified above in its case-in-chief at trial.  The government reserves the right play additional clips of recorded jail calls during the cross-examination of defendant or any other defense witness, as well as the right to introduce additional portions of recorded jail calls after it hears defendant's case and cross-examination of government witnesses.