TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
DAVID T. RYAN (Cal Bar No. 295785)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0552/4491
    Facsimile: (213) 894-2979
    E-mail: reema.el-amamy@usdoj.gov
            david.ryan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-313-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION TO ADMIT TESTIMONY REGARDING DEFENDANT'S PREDISPOSITION TO USE WEAPONS OF MASS DESTRUCTION |
| v. | |
| MARK STEVEN DOMINGO, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Reema M. El-Amamy and David T. Ryan, hereby files its Motion to Admit Testimony Regarding Defendant's Predisposition to Use Weapons of Mass Destruction.

//

//

1     This Motion is based upon the attached memorandum of points and

2  authorities, the attached exhibits, the files and records in this

3  case, and such further evidence and argument as the Court may permit.

4  Dated: June 21, 2021              Respectfully submitted,

5                                    TRACY L. WILKISON
                                     Acting United States Attorney
6
7                                    CHRISTOPHER D. GRIGG
                                     Assistant United States Attorney
                                     Chief, National Security Division
8
9                                        _____/s/_____
10                                    REEMA M. EL-AMAMY
                                     DAVID T. RYAN
11                                    Assistant United States Attorneys

12                                    Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS..........................................3

III.  ARGUMENT....................................................5

IV.   CONCLUSION..................................................6

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**CASES**

Jacobson v. United States,
        503 U.S. 540 (1992).................................................6

United States v. McClelland,
        72 F.3d 717 (9th Cir. 1995).................................5

**STATUTES**

18 U.S.C. § 2332a.......................................................2

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In March and April 2019, after writing for more than a year about his support for the Islamic State of Iraq and al-Sham ("ISIS"), his hatred of the United States, and his desire to carry out mass-casualty attacks in the United States, defendant Mark Steven Domingo ("defendant") planned and took steps to manufacture and use a weapon of mass destruction to commit mass murder.  Defendant attempted to commit this terrorist attack with two people whom he believed were collaborators, but who were in fact a confidential human source ("CHS") and undercover officer ("UCE") working for the FBI.

This Court has previously denied the government's motion to preclude an entrapment defense, but, in doing so, determined that the government is entitled to introduce evidence to rebut the entrapment defense in its case-in-chief at trial.  (Dkt. 150.)  Pursuant to the Court's order, the government may present evidence of defendant's prior conduct in order to demonstrate his predisposition to commit the charged crimes.  (Id.)

At the heart of defendant's entrapment defense is the false assertion that he was not predisposed to use a weapon of mass destruction, namely an improvised explosive device ("IED"), in order to commit mass murder.  (Dkt. 96 at 7.)  As such, defendant's knowledge of and willingness to use explosive devices in order to kill others are central to the government's burden of proof at trial.

D.R. is an individual who served in the United States Army with defendant in 2012 and 2013, where they were Privates in the same infantry platoon in Afghanistan.  D.R. will testify that both he and

defendant received extensive training regarding IEDs and other weapons of mass destruction during their military service.

Additionally, as set forth below, years before defendant ever met the CHS, D.R. observed defendant plot to use explosive devices to kill D.R. and the other members of the platoon to which defendant was assigned.  After defendant had repeatedly made verbal threats to kill others, D.R. saw 40mm grenades[1] that defendant had written the names of platoon members on as an indication that he wanted to use the explosive devices to kill them.  Finally, D.R. can testify that, while in the military, defendant repeatedly expressed disdain for the United States and support for the Taliban.[2]

As the government is required to prove beyond a reasonable doubt that defendant was predisposed to commit the charged crimes prior to being approached by a government agent, it seeks leave to admit limited testimony from D.R. during its case-in-chief regarding defendant's activities in the military.  Specifically, the government would call D.R. to testify about:  (1) defendant's training with respect to IEDs and other weapons of mass destruction; (2) defendant's homicidal threats towards D.R. and others in the platoon; (3) defendant's willingness to use weapons of mass destruction to kill D.R. and others; and (4) defendant's statements regarding disdain for the United States and support of the Taliban.  The

---

[1] A grenade is an explosive device that is designed to cause multiple casualties and destroy buildings when it explodes.  See, e.g., https://en.wikipedia.org/wiki/M203_grenade_launcher.  A grenade is a "destructive device" as defined by Title 18, United States Code, Section 921(a)(4)(A)(ii), and is a "weapon of mass destruction."  See 18 U.S.C. § 2332a.

[2] The Taliban is an Islamist movement and military organization in Afghanistan that engages in jihad and that enforced a strict interpretation of Sharia, or Islamic law.  See, e.g., https://en.wikipedia.org/wiki/Taliban.

1  government reserves the right to raise these topics during the cross-
2  examination of defendant or any defense witnesses.

3  **II.   STATEMENT OF FACTS**

4       The government set forth a detailed statement of facts in
5  support of its Motion in limine to Preclude an Entrapment Defense
6  (Dkt. 61 at 2-13), and incorporates those facts by reference.

7       Defendant served in Afghanistan in 2012 and 2013 and was
8  discharged from the military prior to completing his first full term
9  of service.  Defendant engaged in incredibly troubling behavior while
10 in the military.  As documented in his military file, shortly after
11 beginning his assignment, defendant began to threaten to kill members
12 of his platoon.  He wrote the names of his fellow platoon members on
13 5.56mm ammunition as a further indication of his desire to kill them.
14 Defendant also made comments about killing Afghan civilians.
15 Numerous individuals who served with defendant in the military can
16 attest to his behavior.  In addition to his repeatedly expressing his
17 desire to kill individuals in his platoon, defendant also repeatedly
18 expressed admiration for the Taliban and disdain for the United
19 States government.

20      D.R. and defendant served in the United States Army together,
21 and were Privates in the same infantry platoon in Afghanistan.  D.R.
22 first met defendant when defendant was a new recruit who joined the
23 platoon a few months prior to the unit's deployment to Afghanistan.
24 D.R. regularly interacted with defendant because their platoon did
25 everything together as a unit and lived and worked together in very
26 close quarters.

27      While in Afghanistan, defendant expressed support for the
28 Taliban and described the United States military as the aggressors.

D.R. also observed that defendant sometimes talked to Afghans about Islam while outside the base on missions.  In particular, he would talk to Afghan children about Islam and tried to learn prayers from them when he was supposed to be doing military work.[3]

Defendant, D.R., and their platoon received training regarding IEDs and other weapons of mass destruction, which was standard for infantry soldiers.  They learned about components of IEDs and about devices that could trigger an IED to explode.  They also learned how IEDs could be concealed in a manner to cause a mass casualty attack, and about how to spot IEDs in order to avoid personally being harmed. The term "IED" was used during the training that they received.

During their deployment, D.R. and other members of the platoon located ammunition magazines in defendant's gear that were loaded with 5.56mm rifle rounds that had names of the members of the platoon written on them.  The names were written in ink with a marker, and D.R. believes that defendant wrote the names on the bullets when the bunkmates in defendant's immediate vicinity were on night missions or when defendant was alone during guard tower duty.  D.R. will testify that he interpreted this action by defendant as a threat and an indication that he wanted to kill D.R. and the other members of the platoon.

On another date, D.R. and the other members of the platoon learned that defendant had written the names of his platoon's members on 40mm grenades for a Mark 19 automatic grenade launcher.  D.R. personally saw the names written on the 40mm grenades.  While the

---

[3] Defendant also told D.R. that he wanted to rape and harm Afghan women.  The government will not introduce defendant's statements regarding this topic at trial.

4

grenade launcher was set up in a position to defend the base, defendant had the ability to shoot grenades at soldiers around the base.  Defendant admitted to D.R. and others that he had written the names on both the rifle ammunition and the grenades and that he had plans to kill the members of his platoon.  Defendant was immediately sent home after D.R. and others learned that he had written individuals' names on weapons of mass destruction.

## III. ARGUMENT

Defendant has asserted that he was entrapped by the CHS and UCE in this matter.  (Dkt. 96.)  As such, "[t]he government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped."  See Ninth Circuit Model Criminal Jury Instruction No. 6.2 (2018 ed., approved 9/18).  The government must prove either: "(1) the defendant was predisposed to commit the crime before being contacted by government agents, or (2) the defendant was not induced by the government agents to commit the crime."  Id.  The government is not required to prove both lack of inducement and predisposition.  United States v. McClelland, 72 F.3d 717, 722 (9th Cir. 1995).  The government must prove that the defendant was predisposed to commit the crime prior to being approached by a government agent.  Jacobson v. United States, 503 U.S. 540, 553 (1992).  The jury may consider a wide variety of evidence in determining predisposition and lack of inducement and, here, D.R. is a percipient witness to defendant's own conduct and will testify based on his reliable, personal knowledge.

In asserting that he was entrapped, defendant claims that he did not have a "character and reputation for using a weapon of mass destruction prior to meeting with the CHS."  (Dkt. 96 at 19-20.)  He falsely claims that he had "no inclination to use a weapon of mass

destruction until the CHS proposed that he do so." (<u>Id.</u> at 23.)

D.R.'s proposed testimony undercuts defendant's argument that he was entrapped.  D.R. can testify about the extensive training defendant had received in the military regarding weapons of mass destruction including IEDs.  He can also offer testimony regarding defendant's desire to kill others, including by using weapons of mass destruction.  Finally, he can offer testimony regarding defendant's sympathy for the Taliban and disdain for the United States government, which is also relevant to the charges in this matter.  As D.R.'s testimony is directly related to the government's burden of proof at trial, the Court should permit D.R. to offer this testimony in the government's case-in-chief.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court permit D.R. to offer testimony regarding the following topics during its case-in-chief:  (1) defendant's training with respect to IEDs and other weapons of mass destruction; (2) defendant's homicidal threats towards D.R. and others in the platoon; (3) defendant's willingness to use weapons of mass destruction to kill D.R. and others; and (4) defendant's statements regarding his disdain for the United States and support of the Taliban.