CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
DAVID I. WASSERMAN (Bar, No. 275987)
(E-Mail: David_Wasserman@fd.org)
LISA SHINAR LABARRE (Bar No. 246429)
(E-Mail: Lisa_Labarre@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK DOMINGO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARK DOMINGO, <br><br> Defendant. | Case No. CR 19-313-SVW <br><br> **OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF MR. DOMINGO'S MILITARY CONDUCT** <br><br> Hearing Date: July 12. 2021 <br> Hearing Time: 11:00 a.m. |

Defendant Mark Domingo, by and through his attorneys of record, David I. Wasserman and Lisa Shinar LaBarre, hereby files his opposition to the government's motion to admit evidence of Mr. Domingo's conduct from when he was in the military in 2012. Dkt. 210.

                                             Respectfully submitted,

                                             CUAUHTEMOC ORTEGA
                                             Federal Public Defender

DATED: June 28, 2021           By  */s/ David I. Wasserman*
                                             DAVID I. WASSERMAN
                                             LISA SHINAR LABARRE
                                             Deputy Federal Public Defenders

## I. INTRODUCTION

On March 31, 2021, this Court granted the defense's motion to exclude evidence regarding Mr. Domingo's conduct in the military. Dkt. 193 at 3. This conduct included his threats to kill civilians and his platoon-mates. The Court rendered this decision after the Court denied the government's motion to exclude Mr. Domingo's entrapment defense. Dkt. 150. That is, the Court considered the government's arguments regarding Mr. Domingo's military service against the backdrop of his entrapment defense and still granted the defense's motion to exclude. Notwithstanding, the government again moves this Court to admit evidence it has already excluded. Because the proffered evidence is irrelevant, cumulative, and unfairly prejudicial, the government's motion should be denied.

## II. STATEMENT OF FACTS

After litigating this case for over two years and producing Mr. Domingo's eight-year-old military record on March 5 and 17, 2020, the government now moves *in limine* to admit statements from Mr. Domingo's former platoon-mate D.R.. Specifically, the government seeks to admit the following categories of testimony:

1. Mr. Domingo's training on IEDs and WMDs;
2. Mr. Domingo's alleged plot to use explosive devices (i.e., grenades);
3. Mr. Domingo's threats to kill people, including his platoon-mates, Afghan military officials, and members of the Taliban; and
4. Mr. Domingo's disdain for the United States and support for the Taliban.

Admission of the first three categories of evidence would not only create a trial within a trial where the defense would be forced to litigate the veracity of these claims by calling impeachment witnesses, but the evidence itself is minimally relevant (if at all) and is substantially outweighed by the risk of unfair prejudice.[1] The fourth category of information, in addition to being minimally relevant, is cumulative given the social

---

[1] It should be noted that Mr. Domingo's military records contain no mention of any alleged grenade plot.

media evidence from Mr. Domingo's accounts that the government intends to admit at trial.

### III. LAW

Notwithstanding the government's ability to rebut Mr. Domingo's entrapment defense, it must do so with evidence which is both relevant and does not run afoul of Rule 403. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; *and* (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Thus, when an opponent challenges the relevance of certain evidence, the party proffering the evidence must establish its relevance in an action. The proponent then must show that evidence has some tendency to prove or disprove a fact that is consequential in a case. Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

Rule 403 of the Federal Rules of Evidence excludes even relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *United States v. Curtin*, 489 F.3d 935, 963 (9th Cir. 2007). Unfair prejudice is a tendency to decide on emotional or other improper basis. Fed. R. Evid. 403, advisory committee notes; *see also United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003). Explaining "unfair prejudice," the Ninth Circuit stated in *Curtin*:

> The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited . . . and this risk is disproportionate to the probative value of the offered evidence. Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury. Accordingly, trial courts should exclude marginally relevant but extremely prejudicial evidence.

1  *Curtin*, 489 F.3d at 963-64; *see also United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004) ("Where the probative value is slight, moderate prejudice is unacceptable"). The district court is given wide discretion pursuant to Fed. R. Evid. 403 to exclude relevant evidence if there is a danger of unfair prejudice. *United States v. Dupuy*, 760 F.2d 1492, 1499 (9th Cir. 1985).

Furthermore, this Court has broad discretion under Rule 403 to exclude admissible evidence to avoid delay, waste of time, and needlessly presenting cumulative evidence. *See United States v. Hooton*, 662 F.2d 628, 636 (9th Cir. 1981) (trial court properly exercised his authority to prevent needless presentation of marginally relevant cumulative evidence); *see also Wilson v. Maricopa County*, No. CV-04- 2873 PHX-DGC, 2007 WL 686726, at *13 (D. Ariz. Mar. 2, 2007) (excluding evidence under Rule 403 regardless of its admissibility where "[t]he case would devolve into a series of mini-trials concerning the relevancy and outcome of these other cases, resulting in an unnecessarily lengthy trial for the parties, the Court, and the jury").

## IV.  ARGUMENT

The Court's August 18, 2020, and March 31, 2021, orders specifically note what evidence the government can use to rebut Mr. Domingo's entrapment defense. *See* Dkt. 150 (noting that online activities are relevant to the predisposition analysis); Dkt. 193 (admitting Mr. Domingo's firearms related conduct that occurred after meeting the CHS and, to a limited extent, evidence that Mr. Domingo consumed ISIS propaganda). The Court excluded evidence of Mr. Domingo's conduct in the military because "the probative value of this evidence is substantially outweighed by a danger of unfair prejudice." Dkt. 193 at 3. The government's instant proffer does not change this calculus.

/ /

/ /

A. **Mr. Domingo's military training regarding the general nature of IEDs littered throughout a warzone is irrelevant to his purported predisposition to use a pressure cooker bomb constructed by the UCE.**

The argument between the parties has never been that Mr. Domingo lacked a basic understanding of how IEDs worked. Rather, the substance of the defense's argument at trial will be that, notwithstanding any putative knowledge about IEDs, Mr. Domingo did not have the *ability* to construct an IED on his own and, more importantly, did not decide to use an IED during the instant offense until it was suggested by the CHS and constructed by the UCE. To argue that contrary, the government – as it did in its motion to exclude Mr. Domingo's entrapment defense – conflates a general desire to commit a mass casualty attack and a general knowledge of an IED's components with the specific intent to use an IED during the instant offense. By proffering D.R.'s testimony, the government again ignores this distinction and overstates the nature of D.R.'s statement.

Contrary to the government's representations, D.R. does not state that he and Mr. Domingo received "extensive training" on IEDs while in the military. Instead, he makes clear that although "[t]he platoon did receive training on how IEDs were made, the focus of the training was more about how IEDs worked. Specific topics included how to spot an IED, trigger devices, and IED components." Exhibit A at USAO_14658. The government presents no evidence that the platoon received specific training on how to construct a pressure cooker bomb (i.e., the IED in this case) from scratch. Additionally, the evidence produced by the government indicates that law enforcement officials took painstaking efforts to ensure that Mr. Domingo lacked the knowledge necessary to build a pressure cooker bomb on his own. *See* Exhibit B at USAO_014170 (noting that law enforcement took steps to ensure that Mr. Domingo did not acquire enough knowledge to build an IED himself). As a result, Mr. Domingo could not and did not make the IED in this case. Rather, law enforcement officials not only suggested to Mr. Domingo that an IED be used in an attack, but also directed him

as to what materials to buy and, ultimately, constructed the device themselves out of his presence. *See e.g.*, USAO_001314, 001349 (conversation between the CHS and Mr. Domingo wherein the CHS suggests using an IED in an attack and Mr. Domingo explicitly tells the CHS that he cannot make the IED himself because he lacks the knowhow); USAO_014170 (instructing Mr. Domingo to purchase holiday lights and nails so the UCE to construct the device).

Thus, the government's proffer that eight years ago Mr. Domingo generally learned "how IEDs were made" is not probative of the proposition that Mr. Domingo had the "character and reputation for using a weapon of mass destruction prior to meeting with the CHS." Dkt. 210 at 5. The evidence is irrelevant and the Court should deny the government's motion.[2]

**B. Evidence of an alleged plot to use a readily available, previously constructed grenade in a theater of war is irrelevant to Mr. Domingo's purported predisposition to use a pressure cooker bomb at a park in Long Beach over six years later, and in any event, the risk of unfair prejudice in its admission substantially outweighs any probative value.**

The government claims that Mr. Domingo's alleged plot to kill his platoon-mates with a grenade indicates both that he had a "character and reputation for using . . . [and an] inclination to use a weapon of mass destruction" prior to meeting the CHS. Dkt. 210 at 5-6. This proposition fails for two related reasons. First, the Department of Defense and the United States Code define "weapon of mass destruction" differently. Although the United States Code defines weapon of mass destruction in a way that includes a grenade, the Department of Defense's definition does not. *Compare* Joint Publication 3-40, *Joint Countering of Weapons of Mass Destruction*, *available at* https://www.jcs.mil/Portals/36/Documents/Doctrine/pubs/jp3_40.pdf (November 27,

---

[2] To the extent the Court admits this statement, then the defense requests that the government produce all training records and files regarding Mr. Domingo's training on these issues.

2019) (defining weapon of mass destruction as "chemical, biological, radiological, and nuclear weapons. . . capable of a high order of destruction or causing mass casualties") *with* 18 U.S.C. § 2332a (defining a weapon of mass destruction to include any "destructive device" under 18 U.S.C. § 921(a)(4)(A)(ii) regardless of whether it is a chemical, biological, radiological, or nuclear weapon). Thus, any putative testimony from D.R. about instruction on weapons of mass destruction as defined by the military is confusing, inaccurate, and should be excluded under Rules 401 and 403.[3]

Second, the government's position relies on a logical fallacy that equates a grenade with a pressure cooker bomb. Essentially, the government argues that because both a grenade and a pressure cooker bomb are considered "destructive devices" under the United States Code, then a grenade is the same as a pressure cooker bomb. Not only are grenades and pressure cooker bombs different weapons, but whether Mr. Domingo considered an attack via grenade against his fellow-platoon mates eight years ago matters very little in determining whether he considered using a pressure-cooker bomb against rally-goers in Long Beach in 2019. To the contrary, the overwhelming evidence in the record suggests that notwithstanding any putative plot during his military service in Afghanistan, Mr. Domingo wanted to commit an attack against people in the United States using firearms and not a destructive device.

Because a military rifle grenade that is readily available in a warzone is clearly not the same as the pressure cooker bomb constructed by law enforcement in this case, the proffered evidence is irrelevant. Further, as the Court noted in its March 31, 2021, Order, "the probative value of [Mr. Domingo's conduct in the military] is substantially outweighed by a danger of unfair prejudice." Dkt. 193 at 3. As such, the Court should deny the government's motion.[4]

---

[3] It should be noted that nowhere in Exhibit A does D.R. indicates that the infantry was specifically trained on "weapons of mass destruction" as defined by the Department of Defense.

[4] Should the Court admit the government's evidence, the defense intends to call Dr. J.M., the Army psychologist who evaluated Mr. Domingo while he was in the

7

**C.     This Court should adhere to its prior ruling that the unfair prejudice associated with admitting evidence of Mr. Domingo's alleged threats to kill his platoon-mates and Afghan civilians substantially outweighs any probative value under Rule 403.**

There is no substantive difference between the evidence proffered by the government in its most recent motion and the arguments the Court rejected in its March 31, 2021, order regarding Mr. Domingo's conduct during the military. Because "the probative value of [Mr. Domingo's conduct in the military] is substantially outweighed by a danger of unfair prejudice," the Court should deny the government's motion. *See* Dkt. 193 at 3.

**D.     Given the extensive social media evidence the government intends to admit at trial, additional evidence from Mr. Domingo's military service regarding his disdain for the United States and support for the Taliban is cumulative and should be excluded under Rule 403.**

The government seeks to admit evidence that Mr. Domingo, while in the military, called the United States military the "oppressors," expressed admiration for the Taliban, and would talk to Afghan children about Islam while trying to learn prayers from them. None of this evidence is probative of the charged offenses. The government is not alleging that Mr. Domingo is a member of the Taliban or was a follower of the Taliban at the time of the offense. And the government's proffer is confounded by D.R.'s statements that Mr. Domingo wanted to shoot unarmed Taliban spotters. *See* Exhibit B at USAO_14658-59. Further, evidence of Mr. Domingo's statements about the United States military and the Taliban are cumulative of the government's other social media evidence regarding Mr. Domingo's alleged admiration for terrorist organizations and his consumption of terrorist propaganda. The evidence

---

military after the alleged threats were made, as well as Captain K.K., the Investigating Officer who completed the investigation of Mr. Domingo's alleged infraction, and Captain S.D., the Investigating Officer who recommended a Court Marshal.

Case 2:19-cr-00313-SVW   Document 216   Filed 06/28/21   Page 9 of 9   Page ID #:1509

would also confuse the issues for the jury and waste the Court's time. As such, the aforementioned evidence should be rejected under Rules 401 and 403.

## V.  CONCLUSION

Put simply, Mr. Domingo is not charged with threatening his platoon-mates with a grenade over eight years ago. He is charged with providing material support for terrorists six years later via the attempted use of a pressure cooker bomb. The substance of the government's proffer has already been rejected by this Court as irrelevant, cumulative, a waste of time, confusing, and substantially more prejudicial than probative. For these reasons, the Court should deny the government's motion.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 28, 2021          By  */s/ David I. Wasserman*
                                   DAVID I. WASSERMAN
                                   LISA SHINAR LABARRE
                                   Deputy Federal Public Defenders

9